CINCINNATI METROPOLITAN HOUSING AUTHORITY, APPELLEE, *v.* GREEN, APPELLANT.

(Nos. C-860719 and
C-860774—Decided
August 26, 1987.)

*Shepard, Clifton, Linnenberg &
Rust* and *Richard S. Rust IV,* for appellee.

*Legal Aid Society of Cincinnati, R.
Collins Owens III* and *Mary Asbury,*
for appellant.

BLACK, J. Plaintiff-appellee, Cincinnati Metropolitan Housing Authority ("CMHA"), a housing authority under the United States Housing Act of 1937, Section 1437 *et seq.,* Title 42, U.S. Code, obtained summary judgment in forcible entry and detainer (eviction) against the defendant-appellant, Patricia Green, for nonpayment of her rent for February 1986 in the amount of $76 (case No. C-860719).[1] Her claim is that the money order she bought to pay the rent was stolen. Finding genuine issues of material fact

---

[1] The judgment entry appealed from also dismissed CMHA's second cause of action (for unpaid rent) without prejudice "by agreement of counsel." After the judgment entry was journalized, CMHA moved for reconsideration and Green moved for relief from judgment under Civ. R. 60(B) because it was discovered that an unreported case submitted by CMHA to support its arguments had not been decided as represented by CMHA but had instead been settled. The trial court overruled both motions, stating that it had not relied on that case "as controlling." Green filed a second appeal (case No. C-860774) from the order overruling her Civ. R. 60(B) motion, and we consolidated both appeals. Green's assignments of error refer only to the judgment of eviction, and we therefore do not address the denial of her Civ. R. 60(B) motion and dismiss that appeal.

and not being convinced that CMHA is entitled to judgment as a matter of law, we reverse the judgment below. To set forth our reasons, we must first examine in detail the governing law and then the specific facts in this case.

As a housing authority under the United States Housing Act, CMHA operates pursuant to the federal regulations set forth in Part 966, Title 24, C.F.R. and has adopted certain local procedures. The clear purpose of the federal regulations and the local procedures is to ensure the uniform and fair management of public housing. The overall national policy for public housing is to provide decent living quarters for those in deprived circumstances who cannot compete on equal terms in the open market because their financial resources are low and constantly at risk. The regulations and procedures set forth detailed and comprehensive rules governing the relationship between landlords and tenants that are considerably different from those otherwise applicable in tenancies. Sections 966.4(l) and (m), Title 24, C.F.R. provides in pertinent part:

"(l) *Termination of the lease.* The lease shall set forth the procedures to be followed by the PHA [Public Housing Authority] and by the tenant in terminating the lease which shall provide:

"(1) *That the PHA shall not terminate or refuse to renew the lease other than for serious or repeated violation of material terms of the lease such as failure to make payments due under the lease or to fulfill the tenant obligations set forth in § 966.4(f) or for other good cause.*

"(2) That the PHA shall give written notice of termination of the lease of:

"(i) 14 days in the case of failure to pay rent;

"(ii) A reasonable time commensurate with the exigencies of the situation in the case of creation or maintenance of a threat to the health or safety of other tenants or PHA employees; and

"(iii) 30 days in all other cases.

"(3) That the notice of termination to the tenant shall state reasons for the termination, shall inform the tenant of his right to make such reply as he may wish and of his right to request a hearing in accordance with the PHA's grievance procedure.

"(m) *Grievance procedures. The lease shall provide that all disputes concerning the obligations of the tenant or the PHA shall be resolved in accordance with the PHA grievance procedures which shall comply with Subpart B of this part.*" (Emphasis added.)

Action taken by the public housing authority to initiate termination of a lease for nonpayment of rent is subject to the grievance procedure. A "grievance," as defined in Section 966.53(a), Title 24, C.F.R., "shall mean any dispute which a tenant may have with respect to PHA action or failure to act in accordance with the individual tenant's lease or PHA regulations which adversely affect [*sic*] the individual tenant's rights, duties, welfare or status."

Sections 966.54 and 966.55, Title 24, C.F.R. read in pertinent part:

"§ 966.54 Informal settlement of grievance.

"*Any grievance shall be personally presented, either orally or in writing, to the PHA office* or to the office of the project in which the complainant resides so *that the grievance may be discussed informally and settled without a hearing. A summary of such discussion shall be prepared* within a reasonable time and one copy shall be given to the tenant and one retained in the PHA's tenant file. The summary shall specify the names of the participants, dates of meeting, the nature of the proposed disposition of the complaint and the specific reasons therefor, and shall specify the procedures by which a

hearing under § 966.55 may be obtained if the complainant is not satisfied." (Emphasis added.)

"§ 966.55 Procedures to obtain a hearing.

"(a) *Request for hearing. The complainant shall submit a written request for a hearing to the PHA or to the project office within a reasonable time after receipt of the summary of discussion* pursuant to § 966.54. The written request shall specify:

"(1) The reasons for the grievance; and

"(2) The action or relief sought." (Emphasis added.)

CMHA adopted a "Procedure Governing Evictions of CMHA Tenants for Nonpayment of Rent," under which the monthly rent is due in advance on the first day of each calendar month; an amount not paid in full on the first day of the month is "delinquent"; a "Notice of Termination of Tenancy" may not be served until the thirteenth day of the month; the delinquent tenant has fourteen days after service of the notice within which to make full payment; and the statutory three-day "Notice to Leave The Premises" is not served until after the expiration of the fourteen days without full payment. There are also provisions for the escrowing of partial payments made before service of a Notice of Termination of Tenancy, to which sufficient additions may be made in order to avoid eviction. However, the provisions for payment after delinquency (that is, for full payment after service of the Notice of Termination of Tenancy and for partial payments in escrow) cannot be used by tenants who have previously received two such notices in the preceding twelve months.

CMHA Grievance Procedure Policy provides, under the title "Informal Settlement of Grievance," that "[a]ny grievance shall be presented in writing to the CMHA office * * * within ten (10) days of the action or failure to act about which the resident is complaining." The manager will arrange an informal interview to attempt settlement of the grievance and a summary of discussion will be prepared. Under the title "Procedure to Obtain a Hearing," the complainant must submit a written request for a hearing within ten days following the delivery of the summary of discussion.

In the instant case, the claim for eviction was presented to the trial court on cross-motions for summary judgment. In support of her motion, Green filed an affidavit that was not contradicted by CMHA in any manner, the body of which reads:

"1. I am a tenant in plaintiff's apartment building.

"2. In early February, 1986, I had in my apartment a money order with which I intended to pay my rent.

"3. This money order was stolen from my apartment in early February.

"4. Immediately upon discovering the theft, I telephoned plaintiff's management office and informed Mr. Dickey [G. K. Dickey, Manager of CMHA] of the theft. Mr. Dickey responded that he would contact me later.

"5. Mr. Dickey failed to contact me later. Instead I received a notice of termination of the tenancy on February 14, 1986.

"6. On March 3, 1986, I received a notice to vacate. Upon receipt of this notice, I immediately visited Mr. Dickey in his office and tendered the rent payment which was delayed by the theft of the money order.

"7. Mr. Dickey refused to accept my rent payment, saying that it was my third strike.

"8. Mr. Dickey refused to allow me to file a grievance about the March 3, 1986, notice to vacate; he insisted that this was my third strike and that, as a result, I had no grievance rights.

"9. I returned to Mr. Dickey's office again on March 11, 1986, to file a

grievance about the March 3, 1986, notice. This time Mr. Dickey asserted that I had no grievance rights because of the Cincinnati Metropolitan Housing Authority's ten-day limit.

"10. I then contacted the Legal Aid Society, which led to my written grievance of March 17, 1986, filed on my behalf by Clarence Stephens.

"11. On March 19, 1986, Mr. Dickey wrote me a letter in which he insisted that my grievance rights had expired ten days after the February 14, 1986, notice."

After theft of the money order, Green had no source of money from which to pay the rent other than her "ADC" check for March. Two Notices of Termination of Tenancy had been served on Green during the twelve-month period immediately prior to the notice served on her on February 14, 1986.

The Notice of Termination of Tenancy and the Notice to Leave the Premises as served on Green were computer-generated and signed by G. K. Dickey.[2] The first notice occupied the top half of a single sheet of paper (eight and one-half inches by eleven inches), leaving the bottom half blank. The second notice was printed in the bottom half of the copy of the first notice so that both notices appeared on the same sheet of paper. The top nine lines of the first notice read:

"Patricia Green
1734 Bleecker Lane
Apt. 864
Cincinnati, Ohio 45225

Acct. No. 1612-13
Last Date for Payment
of Rent is March 3, 1986
XXXXXXXXX
By 12:00 Noon 3rd Notice
XXXXXXXXX

"A review of your record shows that you have failed to pay rent when due under the term of your lease agreement. Because you have failed to pay rent in the amount of $72.00 your dwelling lease is cancelled as of midnight February 28, 1986."
XXXX

In oral argument on appeal, CMHA stated that the intent of the series of "X's" in the third and fourth lines was to delete the words and figures "March 3, 1986 by 12:00 noon." We find nothing in the record on appeal to support this allegation, and we therefore give it no weight. On the contrary, the record contains a letter dated March 19, 1986, from Dickey to Green that states her "grievance" request was not made in a timely manner and adds: "I further advised you that any request should have been made not later than March 3, 1986."

On appeal from the eviction order that was made under Civ. R. 56 on the basis of the foregoing facts, Green argues as follows: in her first assignment of error, that she is entitled to summary judgment in her favor as a matter of law; in the second, that the existence of a genuine issue about CMHA's having good cause to evict her precludes a grant of summary judgment in CMHA's favor; and, in her third, that a genuine issue about denial of her grievance rights also precludes a summary judgment for CMHA. We overrule the first assignment of error because we do not believe that the facts set forth in Green's affidavit are sufficient to entitle her to judgment as a matter of law. We sustain the second and third assignments of error. In brief, we find five issues of fact and

[2] Complete understanding of the contents of these two notices will be facilitated by reproducing the single sheet upon which they appeared. This reproduction is set forth in the Appendix.

questions of law that preclude summary judgment for either party on the record before us.

The identity of what factual issues are "material" requires a consideration of the principles applicable when a public housing authority seeks to evict a tenant for nonpayment of rent. We believe these principles are determinable from the federal regulations without reference to constitutional rules of due process. Under the regulations, a public housing authority has the power to terminate a lease "for serious or repeated violation of material terms of the lease such as failure to make payments due under the lease * * *." Section 966.4(l), Title 24, C.F.R. Proof of nonpayment of rent, and particularly repeated delinquencies in payment, will establish, prima facie, a sufficient cause to terminate the lease and evict the tenant. The burden then shifts to the tenant to go forward with evidence of an affirmative defense. A valid defense might be that the nonpayment was caused by circumstances beyond the tenant's control, that the tenant promptly informed the landlord of the circumstances, and that the tenant made reasonably diligent efforts to pay the landlord as soon as possible. This defense is suggested in *Maxton Housing Auth.* v. *McLean* (1985), 313 N.C. 277, 280, 328 S.E. 2d 290, 292, wherein the tenant was allowed the affirmative defense of "a lack of fault on his part in failing to make the rental payment." We are not willing to establish a "no fault" defense, because, in the instant case, a defense of "circumstances beyond control, prompt information, and diligent effort to pay" would be sufficient. We find ourselves in substantial agreement with the court in *Northlake Hills Cooperative, Inc.* v. *Barrett* (Dec. 8, 1986), Montgomery App. No. 9699, unreported.

The record before us demonstrates that CMHA may not be entitled to eviction for nonpayment of rent for either or both of two reasons: (1) Green made a timely tender of the February rent because the Notice of Termination of Tenancy could reasonably be interpreted to give Green until March 3, 1986 to pay the February rent and she tendered it on that day; and (2) Green demonstrated an affirmative defense (to wit: the theft of the money order Green had obtained to pay the rent in early February could establish her nonpayment as being caused by circumstances beyond her control; she promptly advised the CMHA manager; and she tried to pay her rent when funds became available).

Summary judgment was also improper because the record is not at all clear that Green's grievance rights were lost. Her first attempt to file a grievance was on March 3, 1986. Dickey's letter of March 19, 1986 stated that March 3, 1986 was the last day to "make" the request for a grievance, but he refused to accept her grievance on that day, arguing that CMHA's Grievance Procedure Policy requires all initial grievances to be made in writing and within ten days of the act or failure to act that is the subject of the grievance (thus giving Green a deadline of February 24, 1986 within which to deliver a written initial grievance about the first notice). These technical requirements are not found in Section 966.54, Title 24, C.F.R., which has no deadline for filing and no requirement that a grievance must initially be in writing. The record does not address the issue of whether CMHA's Grievance Procedure Policy was or was not authorized or approved under the federal regulations. If it was not, the ten-day deadline and the requirement for a written request cannot be used against Green.

In addition, Green may have been denied another grievance, that is, a

grievance that her tender of rent on March 3, 1986 was wrongfully refused because she had been informed (in the Notice of Termination of Tenancy) that March 3, 1986 was the last day to pay her February rent.

We discern another unresolved issue of law relating to CMHA's service of the Notice to Leave The Premises on March 3, 1986, *i.e.,* it was an act "in accordance with the individual tenant's lease * * * which adversely affect[s] the individual tenant's rights, duties, welfare or status," and would therefore appear to be an act subject to the grievance procedures. CMHA argues that the three-day Notice to Leave The Premises is a purely procedural step generated by total failure to pay rent within the fourteen-day "grace" period and that it cannot be subject to a grievance. If it were, CMHA argues, a tenant clearly at fault in nonpayment of rent could extend his occupancy by a series of frivolous or dilatory grievances. CMHA maintains that the Notice of Termination of Tenancy is the only act subject to the grievance procedure. We do not believe that this issue was addressed by the trial court.

The summary judgment in forcible entry and detainer is reversed in case No. C-860719, and this cause is remanded for further proceedings. The appeal in case No. C-860774 is dismissed. (See fn 1.)

*Judgment accordingly.*

KLUSMEIER, P.J., and HILDEBRANDT, J., concur.

# APPENDIX

CINCINNATI METROPOLITAN HOUSING AUTHORITY
TERMINATION OF DWELLING LEASE

PATRICIA GREEN
1734 BLEECKER LANE
APT. 664
CINCINNATI, OHIO    45225

ACCT. NO.    1612-13
LAST DATE FOR PAYMENT
OF RENT IS        MARCH 3, 19
BY 12.00 NOON     3rd. Notice.

A REVIEW OF YOUR RECORD SHOWS THAT YOU HAVE FAILED TO PAY RENT DUE UNDER THE TERM OF YOUR LEASE AGREEMENT. BECAUSE YOU HAVE FAILED TO PAY RENT IN THE AMOUNT OF $ 72.00 ,YOUR DWELLING LEASE IS CANCELLED AS OF MIDNIGHT FEBRUARY 28, 1986.

THIS NOTICE CONSTITUTES A FOURTEEN 14 DAY CACELLATION-TERMINATION NOTICE AS REQUIRED BY LAW AND YOUR DWELLING LEASE AGREEMENT.

SHOULD YOU HAVE ANY QUESTIONS IN REGARD TO THIS DECISION YOU MAY CALL OR COME TO THE MANAGEMENT OFFICE FOR A PRIVATE CONFERENCE TO DISCUSS YOUR ACCOUNT WITH THE MANAGER. AT THIS TIME YOU WILL BE GIVEN EVERY OPPORTUNITY TO REPLY TO THIS LETTER. IF WE CANNOT COME TO AN AGREEMENT, YOU MAY ALSO HAVE THE RIGHT TO FILE A GRIEVANCE WITH THE MANAGER IN THE MANNER PROVIDED BY THE CMHA GRIEVANCE PROCEDURE, A COPY OF WHICH IS POSTED IN THE MANAGEMENT OFFICE.

IF YOU CONTACT THE MANAGEMENT OFFICE BEFORE THE CANCELLATION DATE STATED ABOVE, IT IS POSSIBLE THAT AN AGREEMENT CAN BE REACHED THAT WILL ALLOW YOU TO REMAIN A RESIDENT OF THE CMHA. IF YOU DO NOT CONTACT THE MANAGEMENT OFFICE AND FAIL TO PAY THE AMOUNT DUE BEFORE THE CANCELLATION DATE, YOU WILL HAVE TO MOVE.

DEVELOPMENT  314                          BY ----------------------, MANAGER
THE UNDERSIGNED SERVED A COPY OF THE FOREGOING NOTICE UPON THE NAMED RESIDENT BY FIRST CLASS MAIL, POSTAGE PREPAID, AND PROPERLY ADDRESSED, ON  FEBRUARY 14, 1986.

NOTICE TO LEAVE THE PREMISES
OHIO REVISED CODE CHAPTER 1923

TO  PATRICIA GREEN          , RESIDENT
PLEASE TAKE NOTICE THAT MANAGEMENT DEMANDS THAT YOU LEAVE THE PREMISES YOU NOW OCCUPY AND WHICH IS DESCRIBED IN THE ABOVE TERMINATION OF DWELLING LEASE NOT LATER THAN MIDNIGHT ON    MARCH  6, 1986.

THE REASON FOR SERVING THIS NOTICE IS YOUR FAILURE TO VACATE THE PREMISES OR CURE THE NOTED BREACH OF YOUR LEASE AGREEMENT WITHIN THE TIME ALLOWED BY THE TERMINATION OF DWELLING LEASE WHICH WAS SERVED UPON YOU IN THE MANNER PRESCRIBED BY APPLICABLE FEDERAL REGULATIONS AND A TRUE COPY OF WHICH APPEARS AT THE TOP OF THIS NOTICE.

```
******************************************************************
*  YOU ARE BEING ASKED TO LEAVE THE PREMISES.  IF YOU DO NOT LEAVE, AN  *
*  EVICTION ACTION MAY BE INITIATED AGAINST YOU.  IF YOU ARE IN DOUBT   *
*  REGARDING YOUR LEGAL RIGHTS AND OBLIGATIONS AS A TENANT, IT IS       *
*  RECOMMENDED THAT YOU SEEK LEGAL ASSISTANCE.                         *
******************************************************************
```

MANAGER ----------------------

NOTICE SERVED
-- PERSONALLY -- BY PLACING UNDER RESIDENT'S DOOR ON   MARCH  3, 1986

BY ----------------------