**COMMUNITY HOMES OF BISMARCK, INC., Plaintiff and Appellee,**

v.

**Heather QUAST, Defendant and Appellant.**

**Civ. No. 930170.**

Supreme Court of North Dakota.

Jan. 18, 1994.

Carpenter Offices, Bismarck, for plaintiff and appellee; argued by Deborah J. Carpenter.

Legal Assistance of North Dakota, Bismarck, for defendant and appellant; argued by Leann K. Bertsch. Appearance by David Boeck.

MESCHKE, Justice.

Heather Quast appeals from a final judgment evicting her from her apartment and awarding restitution to her landlord, Community Homes of Bismarck, Inc. We affirm.

On August 4, 1992, Heather moved into a partially-subsidized apartment complex owned by Community Homes. Heather did not pay the full amount of rent due on January 1, 1993, and agreed to pay the balance of January's rent on February 4. She broke this agreement. She also failed to pay the rent due on February 1. On February 11, Community Homes served a notice to pay or quit on Heather, giving her five days to request an informal conference with Community Homes or fourteen days to pay the delinquent rent.[1] Heather did not request a conference within five days or pay her rent within fourteen days. Rather, she allegedly contacted Community Homes on February 24 to inform them that her February AFDC check was stolen and that she was unable to pay her delinquent rent.[2]

On February 26, when Heather did not comply with the notice to quit, Community Homes began an eviction action. On March 1, Heather attempted to pay her delinquent rent for January and February. On that day, rent for March was also due, and Community Homes refused to accept partial payment. On March 2, Heather attempted to pay rent for all three months, but was rejected again because of her "failure to respond to the notice to quit."

The trial court found that Heather failed to proceed "under the rights afforded her as outlined in the 14 day notice to quit," and that she had a pattern of delinquency in her rent payments. The court disbelieved Heather's testimony that someone "stole ... [her] AFDC check after it was cashed,"[3] in light of her failure to report the theft to the police as suggested to her by a Community Homes representative. The court concluded that Heather violated a material term of her lease,[4] and ordered her to vacate her apartment and pay restitution to Community Homes.

■ Heather argues that good cause to evict her does not exist because the breach of her lease was due to circumstances beyond her control, and because she tendered payment in full prior to the eviction hearing. Community Homes responds that even if such a defense to eviction exists, it is not supported by the facts found by the trial court. We agree.

Heather qualifies for public housing assistance, and receives aid through direct subsidies to Community Homes. The proportion of rent she pays is adjusted periodically according to her income, with the balance paid to Community Homes by the government. As a recipient of these funds, Community Homes is a subsidized project under 24 C.F.R. 247.2(e), and must comply with federal regulations for subsidized projects.

Heather rents her apartment on a monthly basis. Either party to a lease of real property can normally terminate a month-to-month tenancy with proper notice. *See* NDCC 47–16–15. However, federal regulations place an additional burden on owners of subsidized

---

1. A request for an informal conference delays further eviction proceedings until the grievance procedure is completed. 24 C.F.R. 966.-4(*l*)(3)(iv) (4–1–93 ed.).

2. An employee for Community Homes testified that there was no information in Heather's file explaining why she broke her payment agreement. Community Homes boldly argues that this testimony "established that Heather did *not* make any kind of contact with the housing authority within the fourteen days after the notice was served, or that information would have been noted in the file." This inferential leap is not supported by the record. The employee did not testify that all contacts are noted in a tenant's file. Heather testified and the trial court found

that she discussed her difficulties with another employee of Community Homes on February 24. It is puzzling how Community Homes can assert on appeal that this conversation never took place.

3. At oral argument, counsel for Heather stated that the check was stolen before it was cashed. This statement conflicts with Heather's own testimony and is incorrect.

4. Community Homes refers to other grounds for eviction that were excluded by the trial court. Evidence of other good cause to evict Heather was properly excluded because it was not listed as an additional basis for eviction in the notice to quit. 24 C.F.R. 247.6(b) (4–1–93 ed.).

projects. 24 C.F.R. 247.3(a) lists material noncompliance with the rental agreement as one of three exclusive grounds for eviction from subsidized projects.[5] Material noncompliance includes non-payment of rent beyond any applicable grace period. 24 C.F.R. 247.-4(c)(4). As a further restriction, the noncompliance must be serious or repeated. 24 C.F.R. 966.4(*l*)(2)(i). Heather was evicted for repeated non-payment of rent.

The record shows that four due dates passed when Heather did not pay her rent in full or at all, as required in her lease or in a payment agreement. Her tardy offers in March were made after the grace period in her notice to quit had expired. The court properly found that repeated and serious violations of a material term of the lease had occurred in this case.[6]

■ Heather does not dispute that Community Homes established a prima facie case for eviction. She argues that the underlying intent of 24 C.F.R. 247.3(a) is to require that good cause exist before a tenant can be evicted for non-payment of rent. 24 C.F.R. 247.3(a) says that a landlord cannot terminate a lease for material noncompliance if the lease "permit[s] termination of a tenancy without good cause." Based on this prohibition, Heather reasons that a defense exists to an eviction action for non-payment of rent if she can rebut the showing of good cause required by the regulation. Courts in other jurisdictions have agreed with this argument. *See City of Albuquerque v. Brooks,* 114 N.M. 572, 844 P.2d 822 (1992); *Cincinnati Metro.*

*Housing Authority v. Green,* 41 Ohio App.3d 365, 536 N.E.2d 1 (1987); *Maxton Housing Authority v. McLean,* 313 N.C. 277, 328 S.E.2d 290 (1985). *See also* Annotation, *Tenants' Procedural Rights Prior to Eviction or Termination of Benefits under § 8 of Housing Act of 1937,* 81 A.L.R.Fed. 844, 874 (1987). However, Heather did not establish sufficient facts to prove this available defense.

■ For this defense, a tenant must prove three facts to rebut a showing of good cause for non-payment of rent: The failure to pay must be due to circumstances beyond the tenant's control, prompt notice must be given to the landlord of the tenant's inability to pay, and the tenant must make diligent efforts to pay the delinquent rent as soon as possible. *Cincinnati Metro. Housing,* 536 N.E.2d at 5; *Maxton Housing Authority,* 328 S.E.2d at 292. The trial court found that Heather did not prove these necessary facts.

Two elements of this defense were not established by Heather. First, unlike the tenant in *Cincinnati Metro. Housing,* Heather did not promptly notify Community Homes of her inability to pay. She claims her check was stolen in early February. The notice to quit was served on February 11. Heather did not respond until at least February 24,[7] approximately three weeks after the check was allegedly stolen and almost two weeks after she received the notice to quit. The trial court fairly found that she failed to promptly report her difficulties to Community Homes.

5. 24 C.F.R. 247.3(a) says:

> *General.* The landlord may not terminate any tenancy in a subsidized project except upon the following grounds:
> (1) Material noncompliance with the rental agreement,
> (2) Material failure to carry out obligations under any state landlord and tenant act, or
> (3) Other good cause.
> No termination by a landlord under paragraph (a)(1) or (2) of this section shall be valid to the extent it is based upon a rental agreement or a provision of state law permitting termination of a tenancy without good cause. No termination shall be valid unless it is in accordance with the provisions of § 247.4.

6. Community Homes claims that it has complete discretion to reject any rent payments tendered

after eviction proceedings have begun. This argument overstates Community Homes' rights under the regulations. To justify eviction, a payment made beyond any grace period must still be a serious or repeated violation of the tenant's lease. 24 C.F.R. 966.4(*l*)(2)(i).

7. There is some suggestion in the record that Heather spoke to an employee of Community Homes shortly after the check was stolen. This fact could have established prompt notice, and it is clear from the transcript of the eviction hearing that Heather talked to someone at Community Homes before March 1. However, the trial court did not find that this conversation took place before February 24, nor are we able to discern on appeal when it actually occurred. Heather has the burden of proving prompt notice, and we view the evidence in the light most favorable to the decision of the trial court.

Heather also had to prove that non-payment of her rent was due to circumstances beyond her control. Although Heather claims that the proceeds of her February AFDC check were stolen, she did not report the theft to the police. The only evidence she offered to support her claim is her own testimony, that the trial court did not believe. We give due regard to the trial court's opportunity to assess the credibility of witnesses, and will not reverse the trial court's findings unless they are clearly erroneous. *Gillmore v. Morelli*, 472 N.W.2d 738 (N.D.1991). Upon review of the entire record, we are not left with a firm conviction that the trial court erred in disbelieving this claim. Heather did not present sufficient credible evidence to prove her check was stolen.[8]

The trial court concluded that Heather did not rebut Community Homes' showing of good cause to evict her. Her defense relied on facts the court found did not exist, and those findings are not clearly erroneous. We affirm.

VANDE WALLE, C.J., and LEVINE, NEUMANN and SANDSTROM, JJ., concur.

---

8. This case is distinguishable from *Cincinnati Metro. Housing*, 536 N.E.2d 1, where the court reversed a summary judgment against the tenant. In this case, the court conducted a full hearing on Heather's claim before entering a judgment.