[Cite as *Hidden Meadows Townhomes v. Ross*, 2012-Ohio-6017.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| HIDDEN MEADOWS TOWNHOMES, | : | APPEAL NO. C-120045 |
| | | TRIAL NO. 11CV-14876 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| SHAREE ROSS, | : | |
| | | |
| Defendant-Appellant. | : | |

Civil Appeal From: Hamilton County Municipal Court

Judgment Appealed from is: Reversed and Cause Remanded with Instructions

Date of Judgment Entry on Appeal: December 21, 2012

*David Donnett*, for Plaintiff-Appellee,

*Legal Aid Society of Southwest Ohio, LLC*, *Jessica Powell*, *Noel Morgan*, and *Molly Russell*, for Defendant-Appellant.

Please note: This case has been removed from the accelerated calendar.

**CUNNINGHAM, Judge.**

{¶1} Defendant-appellant Sharee Ross appeals from the judgment of the Hamilton County Municipal Court granting a writ of restitution and money damages to plaintiff-appellee Hidden Meadows Townhomes ("Hidden Meadows"). Because Hidden Meadows improperly removed Ross's subsidy and charged her market rent, we determine that the eviction based on her failure to pay the market rent was improper and that the judgment in favor of Hidden Meadows must be reversed.

### Background Information

{¶2} Hidden Meadows, owner/landlord of the Hidden Meadows Apartments, contracted with the Department of Housing and Urban Development (HUD) to participate in federally subsidized, project-based section 8 housing for eligible tenants. Under this program, eligible tenants pay no more than 30 percent of their income in rent ("tenant rent"), and HUD pays the balance ("the assistance payment") of the market/contract rent owed directly to Hidden Meadows.

{¶3} In April 2009, Ross entered into an agreement to rent a unit at Hidden Meadows Apartments. The agreement, based on the HUD model lease, required Ross to pay rent on the first day of each month, but because of her financial and familial situation, HUD made assistance payments on her behalf for the entire amount of rent owed.

{¶4} Because the goal of subsidized housing is to ensure that assisted tenants pay rents equal to their ability to pay, HUD required Hidden Meadows, with Ross's cooperation, to conduct a recertification of Ross's family income and composition at least once a year.

{¶5} The recertification process involves nine steps that are set forth in Chapter 7 of the HUD Multifamily Occupancy Handbook ("the handbook"). According to the handbook, the owner/landlord and tenant should complete the annual recertification by the tenant's recertification anniversary date, which is the first day of the month in which the tenant moved into the property. HUD will terminate assistance payments if a new recertification is not submitted within 15 months of the certification anniversary date.

{¶6} As set forth in Chapter 7 of the handbook, an owner/landlord participating in a project-based section 8 housing program must give a participating tenant a series of written notices informing her of her obligation to report to the property's management office for a recertification interview. During the interview, the tenant must provide requested information and then sign consent forms so that the owner/landlord can verify the tenant's information. These notices must also state the applicable reporting deadlines and the consequences for missing the deadlines.

{¶7} For example, in the "First Reminder Notice," the owner/landlord must inform the tenant that if she does not participate in the recertification interview by the 10th day of the 11th month after the last annual recertification, the owner/landlord will process the recertification but the owner/landlord will not provide the tenant with 30 days notice of any resulting tenant rent increase, which is otherwise required under the HUD model lease. The owner/landlord must also remind the tenant that her failure to participate in the recertification interview before her recertification anniversary date will result in the loss of assistance and the responsibility to pay the full market/contract rent.

{¶8}    The second and third reminder notices, if needed, must include the same information as the first reminder notice.   The third reminder notice must also (1) specify the amount of rent the tenant will be required to pay if she fails to provide the "required recertification information" by the recertification anniversary date and (2) notify the tenant that "this rent increase will be made without additional notice."

{¶9}    The owner/landlord's duty to provide this series of reminder notices and the tenant's duty to comply with them is set forth in paragraph 15 of the HUD model lease.

{¶10}    After the recertification interview takes place (step 4), the owner/landlord must verify the tenant's information (step 5) and enter the required data into a computer program designed to calculate the tenant total payment (utility payments plus rent), tenant rent, and the HUD assistance payment (step 6).

{¶11}    Next, the owner/landlord is to notify the tenant of any change in the tenant total payment or tenant rent resulting from the recertification (step 7).  Under the terms of the lease, the owner/landlord must provide this notice 30 days before any increase can take effect, unless the tenant participates in the recertification interview beyond the 10th day of the 11th month after the last recertification.

{¶12}    Exhibit 7-6 of the handbook is a "sample model form" titled "Notification of Rent Increase Resulting from Recertification Processing."    The owner/landlord is to give the tenant a similar notice that includes any increase in the tenant rent.

{¶13}    Step 8 of the recertification process involves the document at issue in this case, the HUD-50059.   This is a form the owner/landlord generates after verifying the tenant's information and entering that data into software designed to calculate the tenant rent payment and the HUD assistance payment.   The HUD

handbook specifies that the owner/landlord must "[o]btain the original signature" of the tenant on the HUD-50059. By signing the form, the tenant certifies that the information on the form is accurate.

{¶14} The handbook does not provide a sample form exclusively for step 8, but the sample model form for step 7, Exhibit 7-6, includes the following relevant language: "Please visit the site office within 7 days of receipt of this notice to sign and receive a copy of the **HUD-50059**."

{¶15} The owner/landlord must also certify the accuracy of the information on the HUD-50059 and that it complied with HUD's procedures before transmitting an electronic file containing the recalculations to the contract administrator or HUD. After transmitting the file, the owner/landlord must provide the tenant with the initial notice for the following year's annual recertification and obtain the tenant's signature on that form. (step 9 and step 1 of the following year's recertification process.)

{¶16} Recognizing that delays may occur in the recertification process, Chapter 7, Section 8 of the HUD handbook specifies the timing of changes in the tenant rent and assistance payment (as well as the tenant total payment, which is not at issue here) when the recertification process is delayed by certain acts or omissions by the owner/landlord or tenant. One of these provisions allows that "[i]n all cases where the tenant reports for recertification after the 10th day of the 11th month after the last annual recertification but before the recertification anniversary date * * *, all adjustments in assistance payments and the tenant's rent are made retroactive to the recertification anniversary date."

{¶17} None of the provisions in Chapter 7, Section 8 specifically address the issue in this case: a delay or omission related to the signing of the HUD-50059.

### 2011 Recertification and Eviction Action

**{¶18}** Hidden Meadows gave Ross the necessary reminder notices described in steps 1 through 4 of the recertification process. The third reminder notice instructed Ross to meet with Greg Ward, Hidden Meadows's property manager, to supply the information required for Hidden Meadows to complete a review of her "income and family composition." Then it provided:

> If you meet with <u>Greg Ward</u> and supply all required information, we will not terminate your assistance unless your income shows you are no longer eligible for assistance. If you report to the Rental Office after <u>02/10/2011</u>, we will process your recertification but you will not receive a 30 days notice of any resulting rent increase per HUD regulations.
>
> **If you do not respond before <u>04/01/2011</u>, paragraph 15 of your lease gives us the right to terminate your assistance and charge you the contract/market rate effective <u>04/01/2011</u>.**
>
> Please remember, if you do not respond to this final notice, your Section 8 assistance will be terminated and your rent increased to **$773.00**. (Emphasis in original).

**{¶19}** Ross responded to the reminder notices by attending her recertification interview and providing all the information and signatures that Hidden Meadows required to calculate her rent as set forth in steps 5 and 6. She did not respond by February 10, in time to ensure that her rent payment would not

increase without at least 30 days notice from her owner/landlord, but she did respond before the end of February, well before her April 1 anniversary date.

{¶20}   On March 29, 2011, Ward sent Ross a typed letter, captioned "Lease Amendment," which informed Ross that she owed rent of $0, effective April 1, 2011 (her recertification anniversary date), based upon the recently completed review of her income and family composition, and that she was not due for recertification until April 1, 2012.  Ward also informed her that he had attached a copy of the "Form 50059 Owner's Certification of Compliance with HUD's Tenant Eligibility and Rent Procedures and applicable worksheet(s)" and that she "should substitute these forms in place of the previous 50059 and worksheet(s), which are attached to your lease."

{¶21}   Finally, in this letter Ward again informed Ross that she would next recertify on 04/01/2012, that she would receive a reminder notice 120 days before then, that if she did not respond to the reminder notice by 02/10/2012, then the owner/landlord could raise her rent without giving 30 days notice, as provided in the lease, and that she was to sign on the bottom of the notice to acknowledge her receipt of this information.  Underneath this text was a line for Ross's signature, but the signature line was crossed out.

{¶22}   Ward testified that he wrote a note on the top right corner of the notice that provided:   "Please come to the office to sign your annual recertification paperwork."   Ward sent a second copy of the letter on April 12, 2011, after Ross failed to respond to the earlier letter.  Nothing in either letter expressly informed Ross that the recertification was incomplete without her signature on the HUD-50059 or that her rent would increase to $710[1] on May 1, 2011.  To the contrary, the two notices informed her that her portion of the rent would remain at $0.  And the

---

[1]  Apparently the contract/market rent for the unit was reduced to $710 from $783.

only reference to the HUD-50059 was that a copy had been enclosed for Ross to "substitute" in place of the "previous [year's] 50059 * * * attached to [her] lease."

{¶23}  Ross testified at trial that the March 29 and April 12 letters were confusing but she believed that her recertification was completed.

{¶24}  On May 6, Hidden Meadows notified Ross that her tenancy was being terminated for material noncompliance with the lease.  Hidden Meadows explained: "Tenant has failed to complete the annual recertification process.  Rental assistance was terminated on 4/30/11.  Resident now owes market rent, $710 effective 5/1/11. Resident has failed to pay May rent $710."

{¶25}  After receiving the notice, Ross immediately contacted Hidden Meadows.  She signed the HUD-50059 and became recertified on May 20, with her anniversary date remaining on April 1.  Ross's tenant rent contribution remained at $0.

{¶26}  Ross did not vacate or pay $710 to Hidden Meadows.  The record does not demonstrate whether HUD paid or offered to pay the rental assistance on her behalf.

{¶27}  On May 27, 2011, Hidden Meadows pursued a forcible entry and detainer action seeking possession of the premises for failure to pay rent and damages for back rent.

{¶28}  At trial, Ross argued that Hidden Meadows's termination of her subsidy and her tenancy was in violation of the HUD model lease and handbook.

{¶29}  The trial court found that Ross, who had completed the recertification process multiple years, became liable for market rent in May 2011 and failed to pay it.  After entering judgment for Hidden Meadows, which included issuing a writ of

restitution and awarding $710 in damages, the court then stayed its judgment pending this appeal.

## Assignments of Error

{¶30}  On appeal, Ross asserts in three related assignments of error that the trial court erred in granting Hidden Meadows a writ of restitution because Hidden Meadows did not comply with the applicable rules in processing her recertification and in terminating her subsidy.

{¶31}  Ross identifies several alleged defects in Hidden Meadows's processing of her recertification. First, citing Exhibit 7-6, she contends that Hidden Meadows did not provide her the HUD required notice to obtain her signature on the HUD-50059.  Next, she argues that in terminating her subsidy, Hidden Meadows failed to provide her with the required notice that her rent would be raised to the market rate on May 1, 2011.  Relatedly, she argues that the penalties in paragraph 15 of the lease, which allowed her owner/landlord to terminate her assistance and charge her the market rent on April 1, 2011, did not apply because she submitted her recertification information before the April 1, 2011 deadline set forth in the reminder notices that she received.

{¶32}  Alternatively, she argues that even if Hidden Meadows had administered the recertification process properly and increased the rent to the market rate effective May 1 with adequate notice, the HUD handbook does not authorize eviction once the tenant has reported for recertification.

{¶33}  Hidden Meadows argues on appeal, as it did before the trial court, that it provided Ross all necessary notices including her need to sign the HUD-50059.  It also broadly argues that Ross is attempting to apply rules and regulations

that concern other types of subsidized housing, but Hidden Meadows has not provided any support for that argument.

## Analysis

{¶34}   In an action for forcible detainer and entry, the owner/landlord must establish a prima facie case for restitution of the premises. *See* R.C. 1923.02; *Cincinnati Metro. Hous. Auth. v. Green*, 41 Ohio App.3d 365, 370, 536 N.E.2d 1 (1st Dist.1987).  The burden then shifts to the tenant to establish an affirmative defense. *Green* at 370.

## Standard of Review

{¶35}   Ross primarily contends that the trial court misinterpreted the handbook requirements in entering judgment for Hidden Meadows.  This is an issue of law subject to plenary review.  *See Ohio Bell Tel. Co. v. Pub. Util. Comm.*, 64 Ohio St.3d 145, 147, 593 N.E.2d 286 (1992).

## Notice to Sign the HUD-50059

{¶36}   Hidden Meadows maintains that it provided Ross sufficient notice to sign the HUD-50059 and that it was justified in terminating her assistance for failing to sign it by the end of April, because it provided her with the required notices concerning the recertification interview as set forth in the handbook.  We disagree.

{¶37}   As the operator of federally subsidized housing, Hidden Meadows had to comply with federal regulations governing the program,[2] HUD's multi-family occupancy handbook, and HUD's model lease.

{¶38}   The HUD handbook required Hidden Valley to "obtain" Ross's signature on the HUD-50059 as step 8 in the recertification process.  "Obtain"

---

[2] The parties did not cite any specific federal regulations in the trial court or on appeal.

means "[t]o get hold of by effort." *Webster's New International Dictionary* 1682 (1959). Admittedly, the handbook and the lease do not focus the same attention on this step of the recertification process as they do on the recertification interview. But clearly the handbook contemplates that the owner/landlord notify the tenant of her obligation to sign the form when it is available.

{¶39} We reject Hidden Meadows's argument that Ross was not entitled to a notification about the HUD-5009 similar to the one found in Exhibit 7-6 because that particular form was intended only for a tenant who was entitled to 30 days notice of a rent increase. We note that Ross waived her right to be notified 30 days in advance for any rent increases occurring on April 1, 2011, as a result of her participation in the interview after February 10. But nothing in the handbook or lease suggests that she also waived her right to proper notification that her signature was required on the HUD-50059 form.

{¶40} The model language in Exhibit 7-6 that Ross cites is an appropriate way to obtain a tenant's outstanding signature: it clearly informs the tenant of the need to go to the rental office to sign the HUD-50059 within 7 days. In contrast, Hidden Meadows's notice informed her that her recertification was complete, and it never mentioned that she needed to sign the HUD-50059, only that it was included and that she should substitute it for the previous year's form. Hidden Meadows provided no evidence that the letter it sent to Ross on March 29 and April 1 was based on a HUD model form, and nothing in the handbook suggests that it was.

{¶41} We hold that, as a matter of law, Hidden Meadows's notice did not properly inform Ross of her obligation to sign the HUD-50059 and, therefore, Hidden Meadows did not satisfy its obligation to obtain Ross's signature on the form.

## Notice to Terminate Assistance

{¶42} Relatedly, Hidden Meadows did not inform Ross that her failure to sign the HUD-50059 before the end of April would result in the termination of her assistance and the commencement of her obligation to pay $710 in rent effective May 1, 2011. Hidden Meadows argues that the three reminder notices it sent to Ross satisfied the notice requirements of the lease and handbook. But those reminder notices only referenced Ross's obligation to attend her recertification interview before her April 1 recertification anniversary date, and that her portion of the rent would rise to the market rate on April 1, 2011, without additional notice, if she did not fulfill her obligation with respect to the interview before then. It is undisputed that Ross fulfilled these obligations.

{¶43} Thus, because Hidden Meadows did not provide Ross with adequate notice to terminate her assistance effective May 1, 2011, for failure to sign the HUD-50059, we conclude that it could not terminate her tenancy for failure to pay market rent.

{¶44} Ross also argues that even if the increase in rent was appropriate, the eviction was prohibited by section 7-8(D)(3)(f) of the handbook. This section provides that "[t]he owner may not evict the tenant for failure to pay market rent after the tenant reports for the [recertification] interview and the owner is processing the certification." We do not need to reach this issue, because we have determined that Hidden Meadows's increase in Ross's "tenant rent" was not authorized.

## Conclusion

{¶45} Hidden Meadows lacked the authority under the lease and the handbook to raise Ross's tenant rent contribution from $0 to $710 effective May 1, 2011, and to terminate her tenancy due to her failure to pay that rent, where Hidden

Meadows failed to properly notify her that she needed to sign the HUD-50059 and that her failure to sign the form in April would result in the termination of her assistance effective May 1, 2011. Thus, Hidden Meadows failed to demonstrate its right to evict Ross, who subsequently recertified at her prior rate. Therefore, the trial court erred by entering judgment in favor of Hidden Meadows in the action for forcible entry and detainer and damages. Accordingly, we sustain the assignments of error. We reverse the trial court's judgment, and we remand for the trial court to enter judgment in Ross's favor.

Judgment reversed and cause remanded with instructions.

**SUNDERMANN, P.J.,** and **DINKELACKER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.