[757 NYS2d 41]

In the Matter of TED NELSON, Respondent, v RICHARD T. ROBERTS, as Commissioner of the New York City Department of Housing Preservation and Development, et al., Appellants.

First Department, April 8, 2003

APPEARANCES OF COUNSEL

No appearance for respondent.

*Edward F.X. Hart* of counsel (*Leonard Koerner* on the brief; *Michael A. Cardozo, Corporation Counsel* of New York City, attorney), for appellants.

## OPINION OF THE COURT

SULLIVAN, J.

Petitioner, who is age 71 and retired, and David Fries, who is disabled, have been tenants in apartment 21C at Manhattan Plaza, 484 West 43rd Street, New York, New York since March 2000, and have been the recipients of a Section 8 subsidy throughout that time. Tenants of Manhattan Plaza, a limited-profit housing company organized under article II of the Private Housing Finance Law of the State of New York, commonly known as the Mitchell-Lama Law, who come within certain income limitations, are eligible to receive rental assistance payments through the Section 8 Housing Assistance Payments Program of the United States Housing Act of 1937 (42 USC § 1437 *et seq.*). Generally, the federal government's rental assistance payments are measured by the difference between the basic rental for the apartment and 30% of the income of the apartment's occupants. Tenant rent formulae are established by the Housing and Community Development Act of 1981.

Section 8 is administered by the United States Department of Housing and Urban Development (HUD). Part 982 of title 24 of the Code of Federal Regulations (CFR) sets forth Section 8's guidelines. In accordance with 24 CFR part 982, a HUD Handbook sets forth the procedures for implementing the Section 8 program. Manhattan Plaza also provides a Handbook, approved by HUD, setting forth the Section 8 procedures and guidelines for Manhattan Plaza. Locally, the Section 8 program is generally administered by governmental entities called public housing agencies (PHAs) (24 CFR 982.1). In New York City, the Department of Housing Preservation and Development (HPD) is the Section 8 subsidy program's PHA and, pursuant to a housing assistance payments contract with Manhattan Plaza, oversees the program in accordance with HUD regulations.

Since the amount of the Section 8 housing assistance payment is based on the particular tenant's rent and the occupants' annual income, income for purposes of fixing the amount of the subsidy is determined by the guidelines set forth in 24 CFR

5.609 (*see* 24 CFR 982.627), which defines annual income to include "amounts derived * * * from assets to which any member of the family has access" (24 CFR 5.609 [a] [4]). 24 CFR 5.609 (b) (3) specifies that annual income includes "[i]nterest, dividends, and other net income of any kind from real or personal property" and that "[w]here the family has net family assets in excess of $5,000, annual income shall include the greater of the actual income derived from all net family assets or a percentage of the value of such assets based on the current passbook savings rate, as determined by HUD." In pertinent part, the HUD Handbook provides, "If the net family assets exceed $5,000, Annual Income must include the greater of: a. [t]he actual income from assets or b. [a]n imputed income from assets. Owners must impute income by multiplying total net family assets by the passbook rate specified by HUD. Until further notice, owners must use a rate of 2 percent (.02)" (4350.3, ¶ 3-15, at 3-27—3-28 [emphasis in original]). The Manhattan Plaza Handbook provides that a tenant may dispute rent calculations by submitting to HPD the reason he/she believes the calculation to be incorrect.

Before moving into the apartment, petitioner submitted documents, including an "Affidavit of Income" and "Declaratory Statement of Assets and Income from Assets," in support of his Section 8 subsidy application. Although petitioner acknowledged $340,000 in retirement accounts and annuities, consisting of two Chase IRA CDs, an Equi-Vest tax-deferred annuity, a Transamerica annuity and Dreyfus mutual funds, and submitted statements from these accounts showing the income earned, he did not state on his affidavit of income or application that such accounts were earning interest. A Section 8 subsidy was thereupon calculated that set the rent for petitioner's one-bedroom apartment at $778 per month, based on 30% of petitioner and Fries' reported adjusted gross income. For the reason explained, the calculation did not include the interest petitioner was earning on the subject accounts. Since petitioner did not report that he was earning income on the accounts, Manhattan Plaza calculated his income at the imputed rather than the actual rates.

As was its right under its Handbook and the lease, Manhattan Plaza conducted an annual recertification of petitioner's rent in April 2000. In accordance with Manhattan Plaza's policies, petitioner submitted another affidavit of gross income and declaratory statement of assets. By letter of May 23, 2000, Manhattan Plaza notified petitioner that pursuant to its 2000

recertification process, his rent had been adjusted to $1,126, effective July 1, 2000. The increase was based on Manhattan Plaza's discovery that petitioner's accounts were earning interest at rates from 4.5% to 6.5%, interest that should be included as actual rather than imputed income, as it had been previously calculated. Petitioner appealed Manhattan Plaza's adjustment of his rent to HPD, which, after petitioner's submission of additional documentation in support of his appeal, notified him that the rent adjustment pursuant to the 2000 annual recertification was correct.

Petitioner, pro se, thereafter commenced this CPLR article 78 proceeding to annul HPD's determination, arguing the irrationality of a rent adjustment with respect to the same financial information that was the basis of his initial rent and that the interest from his retirement accounts, not actually received but earned as tax-deferred accruals, did not constitute actual income. Supreme Court granted the petition, holding that "only retirement benefits that are actually received should be included in income" and that tax-deferred interest accruals should be treated as imputed rather than actual income. The court noted that, since the question of what constituted income was one of pure statutory analysis, it was not required to give deference to HPD's interpretation of the regulations. HPD appeals. We reverse.

The standard of judicial review of an administrative determination is whether the result reached was arbitrary and capricious or without a rational basis in the administrative record (*Matter of Pell v Board. of Educ.*, 34 NY2d 222, 230-231 [1974]; *Greystone Mgt. Corp. v Conciliation & Appeals Bd.*, 94 AD2d 614, 617 [1983], *affd* 62 NY2d 763 [1984]). Where such rational basis exists, a court "may not substitute its own judgment of the evidence for that of the administrative agency, but should review the whole record to determine whether there exists a rational basis to support the findings upon which the agency's determination is predicated" (*Matter of Purdy v Kreisberg*, 47 NY2d 354, 358 [1979]). The determination of an agency, acting pursuant to its authority and in its area of expertise, is entitled to deference (*Matter of Salvati v Eimicke*, 72 NY2d 784, 791 [1988]).

It is an established principle of administrative law that, while statutory construction is a function of the court, "where the question is one of specific application of a broad statutory term in a proceeding in which the agency administering the statute must determine it initially, the reviewing court's func-

tion is limited" (*National Labor Relations Bd. v Hearst Publs.*, 322 US 111, 131 [1944]). "It is well settled that the construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld." (*Matter of Howard v Wyman*, 28 NY2d 434, 438 [1971].) As stated in *Matter of Tommy & Tina v Department of Consumer Affairs* (95 AD2d 724, 724 [1983], *affd* 62 NY2d 671 [1984]), "[A]n administrative agency's construction and interpretation of its own regulations and of the statute under which it functions is entitled to the greatest weight." In the instant matter, HPD was interpreting not only a statute but its own regulations. Thus, its interpretation is entitled to due deference.

Rents for housing subsidized pursuant to Section 8 are fixed in accordance with the Housing and Community Development Act of 1981 and are based on 30% of the tenant's adjusted income, including income from assets "to which any member of the family has access" (24 CFR 5.609 [a] [4]). While petitioner argued that his retirement accounts should not be included as assets because the HUD Handbook excludes "[a]ssets that are not accessible to the applicant and provide no income to the applicant" (4350.3 CHG-27, Exhibit 3-4, ¶ [B] [7], at 7 of 7 [emphasis omitted]), the fact is he does have access to these accounts and they do earn income. Individual retirement and Keogh accounts, which are part of the subject accounts, are included as assets "because the holder has access to the funds, even though a penalty may be assessed" (HUD Handbook 4350.3 CHG-27, Exhibit 3-4, ¶ [A] [5], at 2 of 7). Interest, dividends and other net income of any kind from real or personal property are included as income (24 CFR 5.609 [b] [3]). Although interest from retirement accounts and annuities is not specifically enumerated, such interest is not in the list of items excluded from income (24 CFR 5.609 [c]) and, therefore, applying the principle expressio unius est exclusio alterius, should be included as income. (McKinney's Cons Laws of NY, Book 1, Statutes § 240; *Matter of Brusco v Braun*, 199 AD2d 27, 31 [1993], *affd* 84 NY2d 674 [1994].) Moreover, since according to the HUD Handbook, these accounts are considered "family assets" and "the definition of annual income includes net income from family assets" (HUD Handbook 4350.3 CHG-27, Exhibit 3-4, at 1 of 7), the interest earned on the accounts is "income." Thus, HPD's determination to include the interest from petitioner's retirement accounts as annual income was rational and reasonable.

The accounts at issue, valued in excess of $340,000, consist of two Chase CDs, one earning 5.25% interest and the other 4.55%, an Equi-Vest tax-deferred annuity earning 5.25% interest, a Transamerica annuity earning 6.5% interest and Dreyfus mutual funds, which earned a reported $4,578.93 in annual income. Petitioner argued that because the interest is not accessible without incurring a penalty, it does not constitute actual income. Petitioner is, however, in fact actually receiving interest income on those accounts and increasing his net worth, although the interest, due to petitioner's investment decisions, remains in the accounts. No legal impediment prevents the withdrawal of the income. Since petitioner's actual income from his assets is greater than the imputed income, his annual income must include actual income (24 CFR 5.609 [b] [3]).

Not only is the inclusion of interest from petitioner's retirement accounts required by the rules and regulations set forth in the CFR, but such inclusion furthers the legitimate goal of extending to the maximum the number of eligible families assisted by the Section 8 program, the intent of which is to assist low-income families in attaining affordable housing (*see* 42 USC § 1437 [a]). By seemingly depriving himself of access to his interest income, petitioner is seeking a greater federal subsidy than that to which he is entitled, thereby frustrating the purpose of Section 8.

Moreover, that the income from these investments is not currently subject to tax is irrelevant for purposes of determining petitioner's eligibility for the federal benefit. Taxation serves a goal different from that of a public benefit program, a difference recognized by the drafters of the Section 8 regulations. 24 CFR 5.609 (c) (17) provides that income shall not include "[a]mounts specifically excluded by any other Federal statute from consideration as income for purposes of determining eligibility or benefits under a category of assistance programs that includes assistance under any program to which the exclusions set forth in 24 CFR 5.609 (c) apply." If the drafters had intended to exclude all nontaxable income, the provision would have read, "Amounts specifically excluded by any other Federal statute from consideration as income."

Finally, HPD did not act arbitrarily, capriciously or otherwise improperly in adjusting petitioner's rent prior to the expiration of the lease term. The lease provided for annual recertification. When the fact that the retirement accounts were earning interest was discovered during the recertification process, the rent was adjusted. Even if there had been an initial miscalculation,

"[e]stoppel is not available against a local government unit for the purpose of ratifying an administrative error * * * made without compliance with formally adopted selection standards and procedures" (*Morley v Arricale*, 66 NY2d 665, 667 [1985]).

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County, entered on or about November 23, 2001, which granted the petition, annulled the determination of respondent New York City Department of Housing Preservation and Development to adjust petitioner's rent from $778 to $1,126 and remanded the matter to recalculate petitioner's rent for the period from July 1, 2000 to March 31, 2001 in accordance therewith, should be reversed, on the law, without costs or disbursements, the petition denied and the proceeding dismissed.

BUCKLEY, P.J., MAZZARELLI, ELLERIN and LERNER, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered on or about November 23, 2001, reversed, on the law, without costs or disbursements, the petition denied and the proceeding dismissed.