OPINION OF THE COURT
Kibbie F. Payne, J.
Motions sequence 001 and 002 are consolidated for the purpose of decision and are disposed of in accordance with the following memorandum decision.
On April 28, 2004, respondent New York State Liquor Authority (the Authority) issued a determination granting an on-premises liquor license to respondent Venture 12 LLC (Venture) to allow Venture to open a nightclub at 12 West 21st Street, New York, New York (the premises). Petitioners bring the present proceeding for an order annulling that determination. This court originally granted petitioners’ motion for a temporary restraining order (TRO) to the extent of restraining Venture from commencing operation of a licensed retail establishment on the premises. However, in response to petitioners’ oral application for a continuation of the TRO, this court lifted the TRO as of July 7, 2004.
In response to the petition, respondents cross-move, by order to show cause, for an order dismissing the petition on the ground that the decision granting the license was rationally based. Respondents, in their answer, also question the standing of certain petitioners to bring this proceeding. In motion sequence 002, petitioners move for an order transferring this matter to the Appellate Division, First Department, pursuant to CPLR 7804 (g), on the ground that it raises an issue of substantial evidence under CPLR 7803 (4).
There are, at present, three nightclubs operating on the block on which the premises is located. Venture proposes to open a *269 nightclub with a capacity to accommodate 300 to 400 people, which will serve food, and feature both live and recorded music. The club will be open Wednesday through Sunday from 9:00 p.m. until 3:30 a.m. The nightclub will be located on the premises recently vacated by another nightclub, known as Cheetah, which petitioners label “notorious” for its excessive noise, milling crowds, honking taxis, drug trafficking, and violent episodes, including, allegedly, a shooting. (Affirmation of urgency at 2.) Petitioners, who include local residents, community organizations, as well as a New York State Senator and a member of the New York City Council, claim that the neighborhood is already oversaturated with bars and nightclubs, and express their concern that the new club will be just as disruptive to the lives of the residents of the area as was Cheetah. Consequently, they oppose the Authority’s decision to bestow a liquor license on Venture.
Under Alcoholic Beverage Control Law § 64 (6-a) (a)-(f), the Authority may consider a number of factors in determining “whether public convenience and advantage and the public interest will be promoted by the granting of licenses and permits for the sale of alcoholic beverages at a particular unlicensed location.” These factors include, as follows:
“(a) The number, classes and character of licenses in proximity to the location and in the particular municipality or subdivision thereof.
“(b) Evidence that all necessary licenses and permits have been obtained from the state and all other governing bodies.
“(c) Effect of the grant of the license on vehicular traffic and parking in proximity to the location.
“(d) The existing noise level at the location and any increase in noise level that would be generated by the proposed premises.
“(e) The history of liquor violations and reported criminal activity at the proposed premises.
“(f) Any other factors specified by law or regulation that are relevant to determine the public convenience and advantage and public interest of the community.”
Alcoholic Beverage Control Law § 64 (7) (b) provides that:
“No retail license for on-premises consumption shall be granted for any premises which shall be . . . (b) in a city, town or village having a population of *270 twenty thousand or more within five hundred feet of three or more existing premises licensed and operating pursuant to the provisions of this section.”
More specifically, as pertains to the present proceeding, Alcoholic Beverage Control Law § 64 (7) (f) provides a discretionary exception to this rule as follows:
“[T]he authority may issue a retail license for on-premises consumption for a premises which shall be within five hundred feet of three or more existing premises licensed and operating pursuant to the provisions of this section if, after consultation with the municipality or community board, it determines that granting such license would be in the public interest.”
The subdivision goes on to state that the Authority is to “conduct a hearing, upon notice to the applicant and the municipality or community board, and shall state and file in its office its reasons therefor.” (Id.)
It is uncontroverted that the vicinity within 500 feet of the premises already includes 21 businesses licensed by the Authority to serve alcohol, including three nightclubs, 13 restaurants, and other venues which serve alcohol, such as a pizzeria, a lounge, and a “gentlemen’s club.” (Reda affidavit at 2.) Therefore, a “500-foot hearing” was held to determine whether granting a liquor license to Venture was “in the public interest.” (Alcoholic Beverage Control Law § 64 [7] [f].)
The hearing commenced on March 2, 2004, upon notice, as required, to Community Board No. 5. The notice stated that, after oral testimony was taken, Venture, as the applicant, would be permitted to provide “additional evidence in written form” as long as the evidence was provided by March 9, 2004. (Notice of cross motion, exhibit A.)
At the hearing, petitioners presented 13 witnesses against the granting of the license, including residents, a representative of the Community Board, elected officials, and a traffic expert, who testified as to the detrimental effect another club would have on the traffic and parking situations on the block, according to a study he had conducted. The residents testified to the constant disturbances, “violence, fighting, crime, noise, litter, *271 public urination and vomiting,” associated with Cheetah,[1] as well as the other clubs on the block.
Venture declined to present any witnesses at the hearing. Instead, Venture used the opportunity provided in the hearing notice to place two affidavits in the record, one from Christopher Reda, and one from Ian Behar, each self-described as a “Member/ Manager” of Venture.[2] Reda emphasized, among other things, that the club Venture proposed to open would be a “first class nightclub featuring popular food selections” (Reda affidavit at 1) would be “smallish by traditional New York nightclub standards” (id.), that there was ample parking, and that there would be “no notable impact on either parking or vehicular traffic.” (Id. at 4.) Reda promised that club patrons would not be permitted to loiter in front of the club, and that vehicles, especially ones playing “boom boxes,” would not be permitted to park illegally in the street in front of the premises.
Reda further stated that there would be a heavy security presence in and outside the club, and promised that the noise levels would be negligible, due to extensive soundproofing in the premises and limits on the volume at which music could be played. Reda also stated that the street in front of the premises would be cleaned regularly throughout the night. Most notably, Reda emphasized that his proposed club was not Cheetah, and would not be like Cheetah, and so, should not be compared with it.
Behar’s affidavit referred to a Community Board member who ran a “competing nightclub” (Behar affidavit at 1), who stated at the hearing that Venture’s club would most likely fail to survive. Behar admitted that this person abstained from voting, but that his contributions to the hearing “clearly affected the other members,” and influenced their votes, in an improper manner. (Behar affidavit at 2.)
On April 28, 2004, the Authority issued a report granting Venture a liquor license. The report initially summarized the testimony of petitioners’ witnesses, and then stated that “the issuance of the within liquor license furthers public convenience and advantage and promotes the public interest, as more fully detailed below.” (Order to show cause, exhibit A., at 5.) The *272 Authority then proceeded to parrot, to an amazing degree, Reda’s affidavit, often using Reda’s very words and phrases, to describe the type of establishment which Venture would create, and why the club would not adversely affect the neighborhood. However, the Authority made no evaluation of the merit or lack of merit of the evidence introduced by petitioners and failed to indicate why it chose to accept, without reservation, all of the assertions made by respondents with respect to the club’s impact on traffic flow, parking, noise and the potential for criminal activities. The Authority perfunctorily concluded that it had “re-viewed the evidence of all parties interested in this application in conjunction with the factors set forth in Section 64, subdivision 6-a of the ABC Law,” and so found that, in the Authority’s discretion, the granting of an on-premises liquor license to Venture was appropriate. (Id. at 7.) The determination contained no discussion at all as to the discrepancies between the parties’ evidence.
In the first instance, the court must address petitioners’ claim that this proceeding raises a question of substantial evidence, which, if so, must be referred to the Appellate Division, First Department. Petitioners are in error. The hearing held by the Authority, although required by statute, was not “an adversarial, quasi-judicial hearing to which the substantial evidence test applies” (Matter of Capizzi v New York State Div. of Alcoholic Beverage Control, 231 AD2d 881, 881-882 [1996]; see also Matter of Wal-Mart Stores v Planning Bd. of Town of N. Elba, 238 AD2d 93, 96 [1998] [hearing, although required by statute, was “informational in nature and did not involve the receipt of sworn testimony or taking of ‘evidence’ within the meaning of CPLR 7803 (4),” and so, did not raise the question of substantial evidence]). As a result, “the relevant question is whether the determination ‘was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious’ ” (Matter of Capizzi, 231 AD2d at 882, quoting CPLR 7803 [3]).
It is well settled that the role of a court on a CPLR article 78 proceeding is solely to determine whether the decision was rationally based, and not arbitrary and capricious (Matter of Pell v Board of Educ., 34 NY2d 222 [1974]; Matter of Nelson v Roberts, 304 AD2d 20 [2003]; see also Matter of Albshaad, Inc. v New York State Liq. Auth., 300 AD2d 1046, 1046 [2002] [“(t)he standard of review for a denial of a liquor license application is whether the administrative determination has a rational *273 basis”]). The court may not substitute its judgment for that of the agency (Matter of Nelson v Roberts, 304 AD2d 20 [2003], supra) and “[t]he [agency’s] interpretation of the statutes and regulations it administers, if reasonable, must be upheld” (Matter of 85 E. Parkway Corp. v New York State Div. of Hous. & Community Renewal, 297 AD2d 675, 676 [2002]).
In the present matter, this court finds that the Authority’s determination granting Venture an on-premise liquor license was arbitrary and capricious in that the Authority failed to follow its statutory mandate to make a determination that the granting of a license in this situation, where many licensed establishments fall within 500 feet of the premises, would be “in the public interest,” under Alcoholic Beverage Control Law § 64 (7) (f), despite having addressed the issues required by Alcoholic Beverage Control Law § 64 (6-a). The agency, despite overwhelming community opposition and the testimony of numerous witnesses speaking out against the granting of the license, accepted as true every statement made by Reda in his affidavit on behalf of Venture, to come to the conclusion that the new club would not be a club like Cheetah, and would, in fact, be safer, cleaner, and more upscale. This is not, however, the same as a finding that the new club would, in any manner, be “in the public interest.” The matter was not, in fact, discussed at all.
In the case of Matter of Waldman v New York State Liq. Auth. (281 AD2d 286 [2001]), the Court annulled a determination of the Authority which granted a liquor license to a restaurant under Alcoholic Beverage Control Law § 64 (7) (f), when the Authority merely found that the applicant “will operate these premises as a bona fide restaurant featuring Cuban cuisine” (Mutter of Waldman, 281 AD2d at 286). The Court found that “[t]his perfunctory recitation fails to comply with the requirement that the Authority state its reasons for concluding that it would be in the public interest” to grant the license. (Id.) The Court concluded that “[o]bviously, something more is needed.” (Id.)
In the present proceeding, the Authority’s determination contains many more words than did the determination in Matter of Waldman (supra), all of which lead to the conclusion that Venture intends to operate a nightclub, that the nightclub will not be like Cheetah, and that Venture will try to disturb the neighborhood no more than is necessary, in light of the nature of the proposed establishment. This is a far cry from determin *274 ing that the creation of a fourth late-night club, and the 22nd establishment serving alcohol on the block, will be in the public interest. No effort was made in the determination to define public interest under the circumstances, or to explain why the overwhelming resistance to the proposed club expressed by the neighborhood was overbalanced by the value or utility of a new nightclub. The Authority failed to “state its reasons for concluding that it would be in the public interest” to grant this license (Matter of Waldman v New York State Liq. Auth., 281 AD2d at 286). Consequently, this court finds that the Authority’s determination was irrational and should be annulled.
Respondents’ argument concerning the lack of standing of some persons to appear as petitioners is irrelevant since there are enough persons with an genuine interest in the proceeding, who have established injury in fact, to allow it to continue (see New York State Assn, of Nurse Anesthetists v Novello, 2 NY3d 207 [2004]). Respondents’ remaining arguments are without merit.
Accordingly, it is ordered that the cross motion to dismiss the petition is denied; and it is further ordered that petitioners’ motion for an order transferring this proceeding to the Appellate Division, First Department, is denied; and it is further adjudged that the petition is granted, and the determination of the New York State Liquor Authority, dated April 28, 2004, which granted a liquor license to respondent Venture 12 LLC, is hereby annulled and vacated.

. Cheetah closed before the 500-foot hearing.

. Since the hearing notice allowed the applicant to provide further evidence, and because petitioners had an opportunity to reply, it cannot be said, as petitioners claim, that the affidavits provided by Venture were done so in secret.