Nancy L. Fredericks, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Submitted on briefs May 7, 1982, to Judges ROGERS, MACPHAIL and DOYLE, sitting as a panel of three.

*Judith E. Wilson,* for petitioner.

*Jean E. Graybill,* Assistant Counsel, for respondent.

OPINION BY JUDGE MACPHAIL, October 8, 1982:

Nancy L. Fredericks (Petitioner) has appealed from the final order of the Department of Public Welfare (Department) which affirmed the decision of a hearing examiner that court-ordered support payments made by Petitioner's husband to his children by a previous marriage, must be included as income to Petitioner's household for food stamp purposes.

The facts in this case, as found by the hearing examiner, are undisputed. Petitioner, the mother of four minor children, received food stamps for her five person household in the monthly amount of $188 through March 31, 1981. The County Assistance Office (CAO) discontinued the household's food stamps effective April 1, 1981, however, due to its recalculation of the household's income following the return of Petitioner's husband to the household. According to the CAO's calculation, the household now has a net monthly income of $891, which includes Petitioner's husband's earnings as well as AFDC assistance received for Petitioner's children. Since this amount

exceeds the $825 maximum allowable net monthly income for a household of six under the food stamp program, the CAO determined that Petitioner's household no longer qualified for food stamps.

The fact which gives rise to the instant appeal is that Petitioner's husband pays approximately $150.50 per month in court-ordered child support for his three children by a previous marriage. This money is deducted directly from his gross pay pursuant to a wage assignment which Petitioner's husband voluntarily executed. Petitioner contended below that the amount paid by her husband for child support should be excluded from the computation of the household's income for food stamp purposes. The hearing examiner found that Department regulations do not provide for the exclusion or deduction of child support payments from income and that all of the wages earned by Petitioner's husband must be treated as income to the household. The Office of Hearings and Appeals affirmed the hearing examiner's decision and the instant appeal was taken.

Two issues have been raised for our consideration: 1) whether or not moneys used for court-ordered child support payments must be included for food stamp purposes as income to the household which makes the payments and 2) whether or not the treatment of such moneys as income violates the household members' due process and equal protection rights under the United States Constitution.

With regard to the first issue, Department regulations provide that all payments received by a household are considered to be income for food stamp purposes unless specifically excluded by the regulations. 55 Pa. Code §523.3(a). Petitioner contends that child support payments *are* excluded from income by the following Department regulation:

Only the following payments received by household members will not be considered income to the household:

. . . .

(8) *Funds for nonhousehold member.* Monies received and used for the care and maintenance of a third-party beneficiary who is not a household member.

55 Pa. Code §523.3(c)(8). This provision implements Section 2014(d)(6) of the federal Food Stamp Act of 1977 (Act).[1] The legislative history of Section 2014 (d)(6) states that:

[T]his section would exclude moneys received by a household, but used for the care and maintenance of another person who is not a household member, for example, a *relative's pension check* that goes to and is cashed by the household and then is used to support that relative in an institution. (Emphasis added.)

H.R. Rep. No. 464, 95th Cong., 1st Sess. (1977), *reprinted in,* [1977] 2 U.S. Code Cong. & Ad. News 2013.

Although brief, this legislative history leads us to conclude that court-ordered child support payments were not intended to be excluded from income under Section 2014(d)(6). We think there is a definite distinction to be drawn between the example provided by the legislative history and the instant case. The pension check, as indicated in the example, would be received by the household *on behalf of* the third-party beneficiary relative. Thus, the household would act merely as a conduit through which the money would flow from the payor to the relative. Since the Act defines income as all payments *received,* it is clearly

---

[1] Pub. L. No. 95-113, 91 Stat. 962 (1977) (current version at 7 U.S.C.A. §2014(d)(6) (1982 Supp.)). The relevant federal regulation is located at 7 C.F.R. §273.9(c)(6).

necessary to exclude such identifiable funds from the income of a household which receives such funds but is not entitled to their use because, in fact, they are for the use and benefit of a specific non-household member. In the instant case, on the other hand, the moneys used to pay child support are initially *earned* by Petitioner's husband and then are paid from his gross income. We believe that the child support obligation here is similar to other household debts and the fact that the money paid is used for the care of non-household members does not, in our opinion, trigger the Section 2014(d)(6) exclusion.

We are aware that recent case law interpretations of Section 2014(d)(6) can logically be read to support Petitioner's position that court-ordered child support payments must be excluded from income. In *Carter v. Blum,* 493 F. Supp. 368, 372 (S.D.N.Y. 1980) the District Court stated that:

> Both the regulations and the legislative history envision household receipt of funds that are used to support an identifiable third person who is not a member of the household. (Footnote omitted.)

A different interpretation of Section 2014(d)(6) was recently suggested by the District Court for the Northern District of New York in *McCoy v. Bergland,* 519 F. Supp. 796, 801 (N.D.N.Y. 1981):

> [A] more appropriate discussion of this exclusion would appear to focus not upon the intended beneficiaries of contested moneys, but the constraints, if any, that are placed upon the actual recipients of the moneys, namely the food stamp applicants. . . . [T]he inquiry concerns whether an applicant has available income to spend on food: if an applicant has a duty to spend money only on behalf of another person, the money, is plainly unavailable for the appli-

cant's own needs and is consequently not considered as income available to the applicant.

While the decisions in *Carter* and *McCoy* dealt specifically with the issue of whether AFDC allowances for unborn children must be excluded from income under Section 2014(d)(6),[2] the reasoning in those decisions would appear to support Petitioner's position in the instant case. We think it is important to note, however, that both decisions rely upon the Courts' interpretations of the legislative history of Section 2014(d)(6) quoted above. Our interpretation of that history has lead us to conclude that child support payments may not be excluded under Section 2014(d)(6).

We note in support of our conclusion, that federal and Department regulations specifically include as income to a household, child support payments received by that household from a nonhousehold member. 7 C.F.R. §273.9(b)(2)(iii); 55 Pa. Code §523.3(b)(2)(v). If moneys paid for child support were intended to be similarly excluded from a paying household's income, we believe the regulations would have done so specifically.

Furthermore, our research regarding the possibility that court-ordered child support payments might be *deducted,* rather than excluded, from income convinces us that moneys paid for child support be treated as income under the Act.

Prior to 1977, federal regulations provided for itemized deductions to be used in calculating net income for food stamp purposes. Among the itemized deductions allowed was one for court-ordered support payments. *See* 2 U.S. Code Cong. & Ad. News at 2026.

---

[2] The Courts in *Carter* and *McCoy* concluded that AFDC allowances for unborn children must be treated as income to the household for food stamp purposes.

The legislative history of the Act explains that the itemized deduction process had become both complex and error-prone. As a solution to those and other problems, the Congress provided for a standard deduction in the Act to replace the itemized deductions previously allowed. *See* 7 U.S.C. §2014(e). The legislative history clearly acknowledges that the standard deduction might result in a smaller total deduction for certain households.

> The new . . . standard deduction does not purport to cover each and every household's situation of past itemized deductions. It is intended to replace that system and could not effectively do so if every participating household were to be held harmless against the impact of the change from itemization to standardization.

2 U.S. Code Cong. & Ad. News at 2038. We think it is clear, therefore, that while Petitioner's household is entitled to a standard deduction, it is not entitled to any additional exclusion or deduction for child support payments made by Petitioner's husband. In fact, the calculation of net monthly income in the instant case included a standard deduction of $85.

We also find Petitioner's constitutional claims to be without merit. We have previously held that use of the standard deduction instead of an itemized deduction for child support payments does not violate due process or equal protection rights of a food stamp applicant. *Madison v. Department of Public Welfare,* 54 Pa. Commonwealth Ct. 318, 421 A.2d 495 (1980).

As we understand it, Petitioner's final argument is that the computation of her household's net income using the standard deduction creates an irrebuttable presumption that the remaining net income is actually available to meet the household's food needs. Petitioner argues that this violates due process since there was evidence that a portion of the net income must be

used to pay child support and therefore is not actually available to meet the household's needs.[3] We must reject this argument. We do not believe that the standard deduction creates an irrebuttable presumption. Rather, it reflects the reasonable judgment of Congress that use of a standard deduction is an acceptable method for dealing with certain necessary nonfood expenditures. *See Knebel v. Hein,* 429 U.S. 288 (1977). We repeat our holding in *Madison* that use of the standard deduction in place of itemized deductions "does not contravene due process of law in any substantive or procedural sense. Congressional action of this sort, to minimize abuse and waste of public funds is reasonable." *Id.* at 319, 421 A.2d at 496.

Order affirmed.

## ORDER

It is ordered that the final order of the Department of Public Welfare, dated April 16, 1981, case number 30270-R, is hereby affirmed.

---

DISSENTING OPINION BY JUDGE DOYLE:

I respectfully disagree with the conclusions drawn by the majority for several reasons and therefore must dissent from the holding.

Fundamentally, I believe that nothing could be more clear from a literal reading of 55 Pa. Code §523.3 (c)(8) (Code), than that monies withheld from the paycheck of petitioner's husband and sent to his three children by a previous marriage residing in another household, should be excluded from "income" under

---

[3] One of the cases relied upon by Petitioner to support her argument on this point was recently reversed by our Supreme Court. *See Molyneaux v. Department of Public Welfare,* 44 Pa. Commonwealth Ct. 111, 403 A.2d 634 (1979), *rev'd,* Pa. , 445 A.2d 730 (1982).

the provisions of the food stamp program. Certainly those children are "third party beneficiaries" to the household of the petitioner, and most assuredly they are not household members of the petitioner's household. To conclude otherwise would simply contradict what I perceive to be the plain meaning of the language in the Code.

Furthermore the rationale enunciated in both *Carter v. Blum,* 493 F. Supp. 368, (S.D.N.Y. 1980) and *McCoy v. Bergland,* 519 F. Supp. 796, (N.D.N.Y. 1981), applied to the factual circumstances in this case, should compel the same result. In both cases, cited in the majority opinion, the courts were dealing with allowances under the Aid to Families with Dependent Children (AFDC) Act for unborn children after their fourth month of pregnancy and both denied food stamp benefits. In *Carter* the court held that although unborn children were *not* members of the food stamp household "this determination does not mandate a finding that the fetus is a separate individual living outside the household." *Id.* at 372. In *McCoy,* the court agreed with the conclusion reached by the court in *Carter,* but not with the rationale. In *McCoy,* the court based its decision rather on the general purposes of the food stamp program, as Chief Judge MUNSON stated:

> In this regard, a more appropriate discussion of this exclusion would appear to focus not upon the intended beneficiaries of contested moneys, but upon the constraints, if any, that are placed upon the actual recipients of the moneys, namely food stamp applicants. Such an approach seems sound because the inquiry concerns whether an applicant has available income to spend on food: if an applicant has a duty to spend money only on behalf of another person, the money is plainly unavailable for the appli-

cant's own needs and is consequently not considered as income available to the applicant.
*Id.* at 801.

What more sound reasoning could be found to implement the declared policy of the Food Stamp Act of 1964, 7 U.S.C. §§2011-2029, to improve levels of nutrition among low-income people by increasing food purchasing power?

The result of *Carter* and *McCoy* is that *one* household can not benefit under *two* federally funded programs: the holding of the majority in the case sub judice, by logical extension, would deny benefits under *one* federally funded program to *two* households.

Lastly, I believe that other federal regulations are illustrative and seem to me somewhat controlling under the present circumstances. Section 273.9(c) of Title 7 of the federal regulations provides as follows:

*Income exclusions.* Only the following items shall be excluded from household income and no other income shall be excluded:

(1) ... Money payments that are not payable directly to a household, but are paid to a third party for a household expense, are vendor payments and are excludable as follows:

. . . .

(iii) Moneys that are legally obligated and otherwise payable to the household, but which are diverted by the provider of the payment to a third party *for a household expense,* shall be counted as income and not excluded as a vendor payment. The distinction is whether the person or organization making the payment on behalf of a household is using funds that otherwise would have to be paid to the household. Such funds include wages earned by a household member and therefore owed to the household, a

public assistance grant to which a household is legally entitled, and support or alimony payments in amounts which legally must be paid to a household member. . . . The distinction is illustrated by the following examples:

. . . .

(C) Money deducted or diverted from a court-ordered support or alimony payment (or other binding written support or alimony agreement) to a third party *for a household expense shall be considered as income. However, payments* specified by the court order or other legally binding agreement *to go directly to the third party rather than to the household, and support payments* not required by a court order or other legally binding agreement (including payments in excess of amount specified in a court order or written agreement) *which are paid to a third party rather than the household shall be excluded* as a vendor payment, even if the household agrees to the arrangement. (Emphasis added.)

By a close analysis of these facially confusing regulations, paralleled in the Pennsylvania Code,[1] the focusing becomes much more clear using the lens of

---

[1] 55 Pa. Code §523.3(c)(3)(iii)(c) states:

Money deducted or diverted from a court-ordered support or alimony payment, or other binding written support or alimony agreement, to a third party for a household expense shall be considered as income. However, payments specified by the court order or other legally binding agreement to go directly to the third party rather than to the household, and support payments not required by a court order or other legally binding agreement including payments in excess of amount specified in a court order or written agreement which are paid to a third party rather than the household shall be excluded as a vendor payment, even if the household agrees to the arrangement.

Chief Judge MUNSON's rationale. By keeping in mind the purpose of the Food Stamp Act we can palpably discern a plan to charge the household which is due the support payments (the household of the three children of the petitioner's husband) with the income, and exclude that income from the household of the person who is legally obligated to pay the support payments (that of the petitioner's husband). I cannot conceive that the harsh result otherwise, *i.e.,* depriving *both* households of food stamp benefits, was intended or promulgated under the applicable regulations.