Judgment reversed<br>and cause remanded.

KILBANE and BLACKMON, JJ., concur.

---

## CINCINNATI METROPOLITAN HOUSING AUTHORITY, Appellant,

### v.

### EDWARDS, Appellee.

[Cite as *Cincinnati Metro. Hous. Auth. v. Edwards,*
174 Ohio App.3d 174, 2007-Ohio-6867.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–060328.

Decided Dec. 21, 2007.

Joy E. Gazaway, for appellant.

Legal Aid Society of Greater Cincinnati, Jessica L. Powell, Noel M. Morgan, and John E. Schrider, for appellee.

_____

Sundermann, Judge.

{¶ 1} Plaintiff-appellant, Cincinnati Metropolitan Housing Authority ("CMHA"), appeals from the trial court's decision in CMHA's action for forcible entry and detainer denying it possession of an apartment unit rented by defendant-appellee, Carlton Edwards.

## CMHA's Forcible–Entry–and–Detainer Action

{¶ 2} On August 3, 2004, Edwards entered into an agreement with CMHA for the lease of a one-bedroom apartment at the President high-rise apartment complex. According to the lease agreement, Edwards was responsible for paying rent of $136 per month. The lease agreement further provided that Edwards's rent was due by the seventh calendar day of each month.

{¶ 3} On October 15, 2004, CMHA served Edwards with a written notice that stated that CMHA was terminating his lease for nonpayment of his October 2004 rent. Fourteen days later, CMHA served Edwards with a notice to leave his apartment. When Edwards failed to vacate the apartment, CMHA filed a complaint for forcible entry and detainer against him.

{¶ 4} Edwards filed an answer, denying that he had breached the lease agreement and raising three affirmative defenses. Edwards asserted that (1) CMHA lacked good cause to evict him, (2) CMHA had caused any nonpayment by failing to calculate his rent in accordance with federal law, and (3) there were equitable reasons that weighed against the termination of his tenancy with CMHA.

## Evidence Presented at Trial

{¶ 5} On August 18, 2005, the case was tried in municipal court. CMHA presented testimony from its property manager, Kimberly DeWalt, and Tywanda Murray, an occupancy specialist. Both women testified that Edwards's August 2004 rent was calculated based on his reported monthly income of $527, which comprised $498 in social-security disability benefits and $29 in supplemental security income ("SSI"). Both women testified that Edwards had noted on his initial application that he paid $264 a month in child support for three children and that CHMA had given Edwards a $480 deduction for his child-support payments.

{¶ 6} Edwards had made two payments in August totaling $286 and one payment in September of $48.50. He had made no further payments to CMHA following the notices. After being served with the notice of termination, Edwards met with DeWalt and submitted new paperwork that reflected a reduction in his social-security benefits. Edwards told DeWalt that he had signed up for an automatic deduction of child support from his monthly benefits and that the Social Security Administration had begun withholding $268 per month from his benefits in court-ordered child support in August 2004. After the deduction, he had only $230.20 left to pay his rent.

{¶ 7} Edwards testified that none of the children he was paying child support for actually lived with him and that two of the children were now adults. DeWalt testified that she had reviewed Edwards's rental calculation with him, explaining that CMHA had not given him a dollar-for-dollar credit for his child-support payments, but that it had given him a permissive $480 deduction for the payments.

{¶ 8} Murray testified that from August 2004 through July 2005, Edwards's rent was set at $136 per month. Following an annual recertification of his income in May 2005, CMHA readjusted his rent in August 2005 to $156 per month based on his receipt of $512 in social-security disability benefits and $87 in SSI benefits. According to Murray, CMHA gave Edwards the same two income deductions that it had given him the previous year: a $400 deduction for being disabled and a $480 deduction for his child-support payments.

### The Trial Court's Decision

{¶ 9} Upon conclusion of the two-day trial, the trial court took the case under advisement. On March 16, 2006, the trial court journalized an entry granting judgment to Edwards on CMHA's first cause of action for restitution of the premises. The trial court's entry further provided that Edwards's monthly rent "shall be based upon moneys actually paid to Edwards, which is the total amount of Social Security benefits less the court ordered child support payments automatically deducted from [Edwards's] Social Security award. [Edwards] shall pay to [CMHA] any shortfall of total rent based upon a recalculation of his portion of rent due based upon the foregoing." CMHA now appeals, raising two interrelated assignments of error for our review.

### Analysis

{¶ 10} In its first assignment of error, CMHA argues that the trial court erred in calculating Edwards's rent because it incorrectly excluded from his income the amounts that Edwards had paid for child support. In its second assignment of error, CMHA contends that the trial court, having incorrectly calculated the

amount of rent Edwards had to pay, failed to appropriately construe the CMHA lease agreement or to find that CHMA had established a prima facie case for restitution of the premises.

## The National Housing Act and Section 8 Housing

{¶ 11} CMHA's lease agreement with Edwards was written pursuant to and controlled by the National Housing Act (Section 1437 et seq., Title 42, U.S.Code) and the implementing federal regulations (Sections 247 et seq., 811 to 813 and 880 et seq., Title 24, C.F.R.) issued by the Department of Housing and Urban Development ("HUD"). These statutes and regulations are collectively part of what is known as the Section 8 housing program. Under this program, HUD subsidizes the rent of income-eligible persons for a rental unit with the payment of a monthly sum to private building owners and public housing authorities like CMHA.[1] The amount of rent a tenant pays is determined by a formula set forth in Section 1437a, Title 42, U.S.Code and is based upon the tenant's income as determined by the guidelines set forth in Section 5.609 et seq., Title 42, C.F.R. HUD then pays the remaining portion of the rent to the participating building owner.[2] Rents for housing subsidized pursuant to Section 8 are limited to 30 percent of the tenant's adjusted monthly income.[3]

■ {¶ 12} Under the Section 8 program, a public housing authority like CMHA can terminate a lease for serious or repeated violation of the material terms of the lease, including a tenant's failure to make payments due under the lease.[4] Nonpayment of rent to a public housing authority under the National Housing Act establishes a prima facie case and is sufficient cause to terminate the lease and to evict the tenant.[5]

## Income Calculation

{¶ 13} In this case, Edwards argued that CMHA could not evict him for nonpayment of rent because it had incorrectly calculated the amount of rent he owed, causing him to pay more than 30 percent of his income. Edwards argued that CMHA was required to exclude the $268 that he paid monthly in child

---

1. See *GP–UHAB Hous. Dev. Fund Corp. v. Jackson* (Feb. 7, 2006), E.D.N.Y. No. CV–05–4830, 2006 WL 297704.

2. Id.

3. Section 1437a(a)(1)(A), Title 42, U.S.Code.

4. See Section 966.4(1), Title 24, C.F.R.; see, also, *Cincinnati Metro. Hous. Auth. v. Green* (1987), 41 Ohio App.3d 365, 370, 536 N.E.2d 1.

5. *Green,* supra, 41 Ohio App.3d at 370, 536 N.E.2d 1.

support when calculating his rent. The trial court agreed, holding that because the amounts garnished from Edwards's social-security benefits for his child-support payments were not received by Edwards, they could not be counted as income to him for purposes of determining his rent.

{¶ 14} CMHA argues that the trial court's decision contravened the United States Code and accompanying federal regulations because they do not provide for the exclusion of child-support payments from income and, therefore, that all of Edwards's social-security benefits had to be treated as income. More specifically, CMHA argues that because the federal regulations list numerous exclusions and deductions from income in Sections 5.609 and 5.611, Title 24, C.F.R., and because monies used to pay child support are not among the amounts listed as exclusions or deductions in those regulations, those monies must be counted as income.

{¶ 15} Edwards argues, on the other hand, that the lack of any exclusions or deductions concerning monies used to make child-support payments is immaterial, since federal law presupposes that the monies are actually received by the tenant as income, but are not counted as income for purposes of calculating a tenant's rent. Edwards argues that because such payments are excluded under the definition of "income" set forth in the plain language of Section 1437a, Title 42, U.S.Code, there is no need to provide an explicit exclusion or deduction for child-support payments either in the United States Code or in the accompanying federal regulations.

### Statutory Language

{¶ 16} Edwards relies on the wording in Section 1437a(b)(4), Title 42, U.S.Code, and Section 5.609(b)(4), Title 24, C.F.R., to support his argument. Section 1437a(b)(4), Title 42, U.S.Code, provides that "[t]he term income means income from all sources of each member of the household, as determined in accordance with criteria prescribed by the Secretary, in consultation with the Secretary of Agriculture, except that any amounts not actually received by the family and any amounts which would be eligible for exclusion under section [1613(a)(7) of the Social Security Act (Section] 1382b(a)(7), [Title 42, U.S.Code)] may not be considered as income under this paragraph." Section 5.609(b)(4), Title 24, C.F.R. provides that annual income includes the "the full amount of periodic payments received from Social Security* * *."

{¶ 17} Edwards argues that because the term "income" as defined in Section 1437a(b)(4), Title 42, U.S.Code excludes any amounts of income "not actually received by the family," and because he does not actually receive the money from his disability benefits that is used to make his child-support payments, it would violate the plain language of the statute to count these amounts as income.

Likewise, he argues that because the federal regulations define annual income as the "full amount of periodic payments received from social security," and because he does not physically receive the full amount of his social-security disability payments, they cannot be counted as annual income.[6]

## Standard of Review

{¶ 18} A search of state and federal case law reveals that this is an issue of first impression. The United States Supreme Court has held that when reviewing an agency's construction of a statute it administers, a court must first determine "whether Congress has directly spoken to the precise question at issue."[7] If Congress's intent is clear, then "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. [Citations omitted.] If, however, the court determines that Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction [of] the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute. [Citations omitted.]"[8]

## *The Term "Received" Encompasses Constructive Receipt of Benefits*

{¶ 19} The term "received" is not defined in the statute or the regulations, nor is it mentioned in the legislative history of the statute.[9] When a statute does not define a relevant term, as is the case here, a court must look to its common, ordinary meaning.[10] This may include the use of dictionary definitions. The American Heritage Dictionary (4th Ed.2000) 1458, defines the word "received" as "to have" or "to acquire or get something."

{¶ 20} Edwards argues that because the withheld social-security benefits were not within his possession or control, he did not "receive" those benefits. But as CMHA points out, the amounts withheld from Edwards's disability benefits were not intended for anyone but Edwards; those amounts were then

---

6. Section 1437a(b)(4), Title 42, U.S.Code; see also Section 5.609(b)(4), Title 24, C.F.R.

7. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.* (1984), 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694.

8. Id. at 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694.

9. See Cranston–Gonzalez National Affordable Housing Act, Pub.L. 101–625, Section 573.

10. See, e.g., *Rousey v. Jacoway* (2005), 544 U.S. 320, 330, 125 S.Ct. 1561, 161 L.Ed.2d 563; *Perrin v. United States* (1979), 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199.

garnished to pay his obligation to his children. Consequently, Edwards had constructive receipt of those monies.

{¶ 21} This is a reasonable interpretation of the term "received" given that federal courts have commonly defined income to include gain from the discharge of indebtedness.[11] For example, in considering similar language under the Food Stamp Act, a federal district court in *Stevens v. Jackson*[12] held that the term "moneys received and used for the care and maintenance of a third-party beneficiary who is not a household member" did not encompass child-support payments.[13] Likewise, in *Cervantez v. Sullivan*, the Court of Appeals for the Ninth Circuit upheld the policy of the Department of Health and Human Services that counted as income amounts subject to state garnishment orders for the purposes of determining eligibility for Supplemental Security Income benefits.[14]

{¶ 22} We further note that while HUD, the agency charged with administrative oversight over Section 8 housing, has not directly addressed the garnishment of child-support payments, it has stated that annual income as defined in Section 5.609(b)(4), Title 24, C.F.R. includes the gross amount of social-security benefits received, including any monies garnished by the Internal Revenue Service.[15] The United States Supreme Court has held that "an agency's construction of its own regulations is entitled to substantial deference."[16] Consequently, our interpretation of the term "received" is consistent with HUD's own construction of that term.

{¶ 23} Finally, were this court to give the term "received" the meaning urged by Edwards, CMHA would end up favoring those tenants who did not pay their debts. Thus, tenants with some outside source of income would have an incentive to fail to pay their debts and to await court-ordered garnishment of their debts, thereby shifting the cost of repayment of their debts to the federal

---

11. See, e.g., *Old Colony Trust Co. v. C.I.R.* (1929), 279 U.S. 716, 729, 49 S.Ct. 499, 73 L.Ed. 918 (payment of debt to third party is income to debtor); see, also, *Martin v. Sullivan* (C.A.9, 1990), 932 F.2d 1273, 1276 (holding that because the plaintiff was "benefiting financially from the satisfaction of the debt," the financial benefit was properly counted as income to the plaintiff).

12. (W.D.Va.1992), 800 F.Supp. 344, 346–347.

13. See, also, *Fredericks v. Pennsylvania Dept. of Public Welfare* (1982), 69 Pa.Cmwlth. 315, 451 A.2d 12.

14. (C.A.9 1992), 963 F.2d 229.

15. See HUD General Income and Rent Determination Frequently Asked Questions at *http://www.hud.gov/offices/pih/programs/ph/rhiip/faq gird.cfm*.

16. *Lyng v. Payne* (1986), 476 U.S. 926, 939, 106 S.Ct. 2333, 90 L.Ed.2d 921.

government.[17] Because the term "received" as used in Section 1437a(b)(4), Title 42, U.S.Code and Section 5.609(b)(4), Title 24, C.F.R. does not mean that social-security disability funds must be physically received in the tenant's hand before they can be counted as income, we find Edwards's first argument to be without merit.

### No Double Counting of Income

{¶ 24} Edwards next argues that because child-support payments are counted as income to the recipient pursuant to Section 5.609(b)(7), Title 24, C.F.R. they could not be counted as income to him as the payor. He relies upon the reasoning employed in *Heath v. Secretary, for Cabinet for Human Resources*, where a Kentucky court of appeals excluded child-support payments from the calculation of a father's income under the Food Stamp Act on the basis that the monies he had used to pay child support could not have been counted as income to both him, as the payor, and the payee's household.[18] But as CMHA points out, and Edwards admits, Edwards never presented any evidence that his children were living in public housing. But even if he would have presented such evidence, his argument would still lack merit because the federal regulations do not count child support as income to the payor; rather, the regulations only count as income the funds used by the payor to make the child-support payments. Consequently, there is no double counting of the income under the regulatory scheme, as Edwards suggests.

### The Unfunded Exclusion for Child–Support Payments

{¶ 25} Finally, we note that in October 1998, Congress amended Section 1437a(b)(5)(A)(v), Title 42, U.S.Code, to provide a mandatory exclusion from income for court-ordered child-support payments as follows:

{¶ 26} "(v) Child support payments. Any payment made by a member of the family for the support and maintenance of any child who does not reside in the household, except that the amount excluded under this clause may not exceed $480 for each child for whom such payment is made; *except that this clause shall apply only to the extent approved in appropriations Acts.*" [19] (Emphasis added.)

---

17. See, e.g., *Nelson v. Roberts* (2003), 757 N.Y.S.2d 41, 45, 304 A.D.2d 20 (where a New York court held that a tenant "by depriving himself of access to interest income [was] seeking a greater federal subsidy than that to which he [was] entitled, thereby frustrating the purpose of Section 8").

18. (Ky.App.1985), 704 S.W.2d 659, 660.

19. See 1998 Quality Housing and Work Responsibility Act, P.L. 105–276., Section 508(a).

This exclusion, however, has never been implemented in subsequent appropriations acts. Consequently, Section 8 tenants are not entitled to this exclusion.[20]

{¶ 27} Subsequent amendments have also been proposed to permit a deduction for "fifty percent of the amount of any payment made by a [tenant or] family member for the support and maintenance of any child who does not reside in the household," but those amendments have never made it out of committee hearings.[21] The fact that Congress has never funded the earlier exclusion, combined with the two unenacted amendments, further supports our conclusion that Congress was aware of the current treatment of child-support payments and HUD's interpretation of them and is comfortable with the current scheme that treats monies garnished from a tenant's disability benefits for child support as income under the National Housing Act. Given the foregoing analysis, we can only conclude that Congress never intended for child-support payments to be excluded from income on a dollar-for-dollar basis.

{¶ 28} Therefore, in the absence of any specific exclusions or deductions, the record reflects that CMHA gave Edwards a permissive deduction of $480 for his child-support payments.[22] Based upon the plain language of the National Housing Act and its accompanying regulations, Edwards was not entitled to any additional exclusion or deduction for those payments. As a result, we conclude that the trial court erred in excluding from Edwards's income the full amount of his monthly child-support payments for purposes of calculating the amount of his Section 8 rental obligation. We, therefore, sustain CMHA's first assignment of error.

## CMHA Has Established a Prima Facie Case for Restitution of the Premises

{¶ 29} In its second assignment of error, CMHA argues that the "trial court, upon developing an impermissible alternate method of public rent calculation, failed to construe the CMHA residential lease agreement or [to] find that CMHA had established a prima facie case for restitution of the premises."

{¶ 30} The trial court's decision to deny CMHA's writ of restitution was based solely on its conclusion that CMHA was demanding rent from Edwards in excess of the limits set by Section 1437a, Title 42, U.S.Code. Our review of the record and the case law reveals, however, that CMHA calculated Edwards's rent in accordance with the procedures outlined in the code and the accompanying

---

20. See 64 F.R. 23460, eff. Apr. 30, 1999.

21. See H.R. 2897 (2003); H.R. 4347 (2005).

22. See Section 5.611(b), Title 24, C.F.R.

federal regulations. As Edwards's rent did not exceed 30 percent of his adjusted monthly income,[23] Edwards admitted that he had failed to tender his rent for October 2004, and there was no evidence that CMHA had accepted rent since serving Edwards with the requisite notice to leave the premises, CMHA had established a prima facie case for restitution of the premises. As a result, we sustain its second assignment of error. We, therefore, reverse the judgment of the court below and remand this cause for further proceedings in accordance with this decision and the law.

Judgment reversed
and cause remanded.

HENDON, J., concurs.

PAINTER, P.J., dissents.

PAINTER, Presiding Judge, dissenting.

{¶ 31} The code and regulations are obviously written by people with limited command of the English language. Perhaps it is their second language—the first being bureaucratese. I am therefore hesitant to believe that the words "any amounts not actually received" would include amounts "constructively received." "Actually" means actually—in fact, not theoretically. Dictionaries give a synonym as "really." If the drafters meant "actual" to mean constructive, they could have said so. They did not, so we should not either. Let's stick to the text.

{¶ 32} If we can interpret "actually" to mean constructively, we could interpret literally to mean figuratively—as in "it's literally raining cats and dogs." Splat.

---

23. As mentioned earlier, Edwards's adjusted annual income reflected deductions of $400 for a disabled tenant pursuant to Section 5.611(a)(2), Title 24, C.F.R. and a permissive deduction of $480 for his child-support payments, pursuant to Section 5.611(b), Title 24, C.F.R.