[Cite as *State v. Hammock*, 2022-Ohio-3570.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-210518 |
| | | C-210620 |
| Plaintiff-Appellee, | : | TRIAL NO. C-20CRB-12575 |
| | : | |
| vs. | | *O P I N I O N.* |
| | : | |
| ELENA HAMMOCK, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: October 7, 2022

*Keith D. Moore*, City of Norwood Law Director and *Timothy A. Garry, Jr.,* Assistant Law Director for Plaintiff-Appellee,

*William F. Oswall Jr.,* for Defendant-Appellant.

**BERGERON, Judge.**

{¶1}  With a hodgepodge of furniture pieces and a mishmash of trash and debris strewn across her yard (a collection that only grew despite efforts to convince her to clean up the premises), the trial court convicted defendant-appellant Elena Hammock for the accumulation or dumping of garbage in one's yard in violation of a City of Norwood Codified Ordinance.  On appeal, Ms. Hammock challenges the constitutionality of the ordinance, faults the absence of a mens rea instruction in the trial court's jury instructions, and alleges ineffective assistance of counsel.  As we sort through these claims, we find (among other things) problems based on preservation of these points at trial, and we accordingly overrule her assignments of error and affirm the judgment of the trial court.

I.

{¶2}  In October 2019, Dale Marshall, the Health Inspector for the Norwood City Health Department, visited Ms. Hammock's home to post a notice to vacate the property due to a lack of running water.  Based on a long history of confrontations between Ms. Hammock, her neighbors, and the city of Norwood, Mr. Marshall asked three police officers to accompany him.  While there, Mr. Marshall noticed junk and debris overtaking Ms. Hammock's yard, prompting him to issue an order directing her to clean the property up within 15 days.  Ms. Hammock later requested an additional 60 days to clear the property, which the city granted.  Some eight months later, however, the property sat more or less in the same state.

{¶3}  In July 2020, the city of Norwood accordingly filed a complaint against Ms. Hammock in the Hamilton County Municipal Court.  The complaint alleged that Ms. Hammock "knowingly failed to remove all scrap items, litter, trash, junk, debris,

2

garbage and other unsightly and/or unsanitary items from her property," and that she continues to "trash the exterior of her property."  The ordinance at issue reads:

> No person shall place, leave, dump, or permit to accumulate any garbage, rubbish, trash, debris, junk or other materials in any building, or on any premises, improved or vacant, or on any open lot or valley in the city, so that the same shall afford food or harborage for rats or shall constitute an unsightly appearance with regard to the character of the neighborhood.

Norwood Codified Ordinance 1747.14.

{¶4}   Ms. Hammock pro se filed an answer/motion to dismiss (a public defender would later represent her), mainly insisting that she could not clean the property because of the ongoing harassment from her neighbors (these parties have apparently been warring with each other for nearly a decade) and because her van broke down.  She also filed a number of requests for discovery and interrogatories that have nothing to do with this case, attempting to secure body camera footage and other evidence depicting her alleged assault by the Norwood police when she called them to intervene in previous neighbor disputes.  At its core, she seems to believe that the city is colluding with the police and her neighbors to force her out of her home.

{¶5}   At trial, Mr. Marshall and Sean Kenan, one of the neighbors allegedly giving Ms. Hammock trouble, testified for the state.  Mr. Marshall testified that he took the pictures of Ms. Hammock's yard, and the city tendered these photos into evidence.  One can scarcely see the ground in the photos due to the piles of wooden pallets, seemingly infinite boxes, containers, furniture and appliance pieces, and an abundance of what could only be considered debris and trash.

3

{¶6} Because the Covid-19 pandemic disrupted the world in early 2020, Mr. Marshall testified that he gave Ms. Hammock more than the 60 additional days she requested to clean the property. He drove by periodically and she did not appear to be making any progress—to the contrary, the garbage collection proliferated, so he decided to take the matter to court.

{¶7} Mr. Kenan testified that he has lived next door to Ms. Hammock for six years and that "the accumulation of junk" has presented a problem from the moment they became neighbors. In one of the earlier court cases involving these parties, another judge ordered a Rumpke dumpster to be placed in front of Ms. Hammock's house and assigned people to help dispose of her items as part of their community service. Mr. Kenan told the court that Ms. Hammock goes out weekly on Tuesdays, Wednesdays, and Thursdays and brings her car back loaded with accoutrements: doorframes, grills permeated by rust, mass buckets of Styrofoam, etc. He claimed that he and his family cannot enjoy their backyard because the smell emanating from Ms. Hammock's property calls to mind raw sewage, and that infestations of mosquitos abound from the stagnant water Ms. Hammock collects in five-gallon buckets.

{¶8} Ms. Hammock testified in her own defense. She did not deny having an accumulation of debris in her yard, but endeavored to offer justifications for it. She testified that Mr. Kenan, his girlfriend, and his daughter have harassed her for years, and she accused them of throwing the trash in her yard and then calling the health department. She explained that she goes to people's curbs on trash nights and collects anything that might be reusable or sellable in order to make money, but that her plans to monetize these items keep being thwarted by Mr. Kenan, who allegedly vandalized her van to preclude her from relocating the items. According to Ms. Hammock, the

collection in her yard was not organized "as much as I like, not much probably people like, but I tried to do what I could." She does mention having a disability that prevents her from being able to get the yard cleared out, but refused to undergo an evaluation at the court clinic to determine whether any disability accommodations might be appropriate for her defense.

{¶9}   The jury convicted Ms. Hammock of violating the Norwood ordinance. Her counsel moved for acquittal after the verdict under Crim.R.29, challenging whether the state proved the elements of the ordinance.  The trial court denied the motion and continued Ms. Hammock's sentencing, requesting a presentence report and advisability of treatment given the issues that surfaced throughout the trial.  The court also ordered Ms. Hammock to start cleaning the property and gave her 30 days to do so before considering her sentence.  Ms. Hammock did not clean the yard and refused to participate with the court clinic or the probation department in the court-ordered evaluations, claiming that the only problem was that she has been "bullied" by everyone involved and that "no pill can help bullying."  The trial court sentenced her to 30 days in jail and a $200 fine.  Ms. Hammock timely appealed, raising three assignments of error.

## II.
### A.

{¶10} On appeal, Ms. Hammock first takes aim at the language in the ordinance.  She argues that the phrasing, "an unsightly appearance with regard to the character of the neighborhood," is unconstitutionally vague, preventing the average person from deducing what activity is prohibited.  "A zoning ordinance may be challenged as unconstitutional on its face or as applied to a particular set of facts."

5

*Jaylin Invests., Inc. v. Village of Moreland Hills*, 107 Ohio St.3d 339, 2006-Ohio-4, 839 N.E.2d 903, ¶ 11. Ms. Hammock presents a facial challenge, meaning that she "alleges that the overall ordinance, on its face, has no rational relationship to a legitimate governmental purpose and it may not constitutionally be applied under any circumstances." *Id.* "The determination whether a statute or ordinance is constitutional is a question of law that we review de novo." *City of Cleveland v. State*, 157 Ohio St.3d 330, 2019-Ohio-3820, 136 N.E.3d 466, ¶ 15.

{¶11} The ordinance at issue does not apply unless a defendant, "place[s], leave[s], dump[s], or accumulate[s] any garbage, rubbish, trash, debris, junk or other materials in any building, or on any premises * * *." Norwood Codified Ordinance 1747.14. As stated, when she testified in her own defense, Ms. Hammock did not deny having an accumulation of debris in her yard, but rather provided justifications as to that state of affairs. After this initial inquiry, the ordinance is disjunctive: finding a violation if the accumulation of debris "shall afford food or harborage for rats *or* shall constitute an unsightly appearance with regard to the character of the neighborhood." *Id.* (Emphasis added).

{¶12} Importantly, Ms. Hammock's facial challenge only addresses the second alternative for the ordinance. She specifically asserts that no definitions or guidelines exist to provide an ordinary person with a proper understanding of "an unsightly appearance with regard to the character of the neighborhood." We are not persuaded.

{¶13} Because all enacted legislation enjoys a strong presumption of constitutionality, Ms. Hammock must prove the constitutional defect beyond a reasonable doubt to overcome the presumption. *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142, 128 N.E.2d 59 (1955) paragraph one of the syllabus. It

is axiomatic that "[t]here is a legitimate governmental interest in maintaining the aesthetics of the community and, as such, aesthetic considerations may be taken into account by the legislative body in enacting zoning legislation." *Franchise Developers, Inc. v. Cincinnati*, 30 Ohio St.3d 28, 33, 505 N.E.2d 966 (1987).

{¶14} A statute or ordinance may be ruled unconstitutional on grounds of vagueness. *State v. Bennett*, 150 Ohio App.3d 450, 2002-Ohio-6651, 782 N.E.2d 101, ¶ 17 (1st Dist.2002). The vagueness doctrine is premised on the Due Process Clause of the Fourteenth Amendment and "bars enforcement of a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Id.*, quoting *United States v. Lanier*, 520 U.S. 259, 266, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997).

{¶15} Two requirements must be met to withstand a facial vagueness challenge: the ordinance must be sufficiently definite to provide a person of ordinary intelligence with adequate notice of the conduct that the statute proscribes, and the statute must provide sufficiently definite guidelines for law enforcement officials in order to prevent arbitrary and discriminatory enforcement. *Id.* at ¶ 19.

{¶16} In support of her facial challenge, Ms. Hammock relies on *State v. Bielski*, 2013-Ohio-5571, 5 N.E.3d 1037 (7th Dist.), where the appellant was cited under a rubbish ordinance that read "[a]ll exterior property and premises, and the interior of every structure, shall be free from any accumulation of rubbish or garbage." *Id.* at ¶ 15. The court concluded that the ordinance was unconstitutional on its face because terms like "accumulation," "rubbish," and "garbage" were not clearly defined, and because the ordinance provided "little or no guidelines for use in determining

7

whether or not a citation should be issued or even what behavior constitutes a violation." *Id.* at ¶ 19.

**{¶17}** However, the ordinance before this court does provide guidance for what behavior constitutes a violation. Unlike the provision in *Bielski*, the ordinance here explains that "[n]o person shall *place, leave, dump* or *permit to accumulate*" any garbage—in other words, it requires action by someone. Norwood Codified Ordinance 1747.1414.47 (emphasis added). Moreover, Ms. Hammock does not challenge any imprecision in the words "rubbish," "trash," or the like, as she limits her attack to the "unsightly appearance" aspect of the ordinance. Therefore, *Bielski* fails to aid her quest.

**{¶18}** With our scrutiny narrowed to the "unsightly appearance" clause, we must first analyze the ordinance's plain meaning. "When a statute does not define a relevant term, as is the case here, a court must look to its common, ordinary meaning." *Cincinnati Metro. Hous. Auth. v. Edwards*, 174 Ohio App.3d 174, 2007-Ohio-6867, 881 N.E.2d 325, ¶ 19 (1st Dist.). "This may include the use of dictionary definitions." *Id.*; *State v. Lucko*, 5th Dist. Coshocton No. 2021CA0007, 2021-Ohio-3293, ¶ 7 ("Because the Revised Code does not define garbage, trash or waste, the trial court applied the dictionary definitions.").

**{¶19}** Merriam-Webster defines "unsightly" as "not pleasing to the sight; not comely." And we must consider this definition in the broader context of the ordinance quoted above. While we could harbor some doubt about "unsightly" standing alone, the context removes any question of vagueness. The ordinance is sufficiently definite to provide a person of ordinary intelligence with notice that she should not accumulate

garbage or other materials in her yard to the point that it becomes not pleasing to the sight of the people living around her.

{¶20} Additionally, because the ordinance is disjunctive, the jury could have convicted Ms. Hammock solely based on the first alternative of the ordinance, "so that the same shall afford food or harborage for rats." Ms. Hammock does not challenge the constitutionality of this language at all. Thus, even if the second alternative raised questions concerning the constitutionality of the ordinance, the jury could have convicted Ms. Hammock under the ordinance for an independent (and entirely permissible) reason, without raising constitutional alarm. *Hulbert v. Ohio Bur. of Workers' Comp.*, 10th Dist. Franklin No. 14AP-374, 2014-Ohio-3937 ("A trial court's judgment must stand when only one of two separate and independent reasons for the judgment are challenged on appeal, regardless of the merits of appellant's assigned error."). We accordingly overrule Ms. Hammock's first assignment of error.

B.

{¶21} Ms. Hammock's second assignment of error posits that because the ordinance did not evidence a clear intent to impose strict liability, the jury should have been instructed on the appropriate mens rea of recklessness. But Ms. Hammock lodged no objection to the jury instructions below, confining our review to plain error. "Typically, if a party forfeits an objection in the trial court, reviewing courts may notice only '[p]lain errors or defects affecting substantial rights.' " *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 15, quoting Crim.R. 52(B). There are three limitations to this rule: (1) there must be an error; (2) it must be plain; and (3) the error must have affected substantial rights. *Id.* at ¶ 15-16. "Substantial rights" means that the trial court's error must have affected the outcome of the trial. *Id.*

Courts are to notice plain error "only to prevent a manifest miscarriage of justice." *Id.*, quoting *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978). Moreover, when considering the propriety of jury instructions, we must consider the totality of the instructions at hand and the potential for juror confusion. *Kokitka v. Ford Motor Co.*, 73 Ohio St.3d 89, 93, 652 N.E.2d 671 (1995).

**{¶22}** The Norwood ordinance does not contain a specific degree of culpability. R.C. 2901.21(C)(1) provides that "[w]hen language *defining an element of an offense that is related to knowledge or intent* or to which mens rea could fairly be applied neither specifies culpability nor plainly indicates a purpose to impose strict liability, the element of the offense is established only if a person acts recklessly." (emphasis added). Ms. Hammock seizes on this statute to conclude that recklessness is the appropriate mens rea in the absence of any intent to impose strict liability.

**{¶23}** The first problem with Ms. Hammock's argument is that the section relied on in her brief, R.C. 2901.21(C)(1), applies only when the statute or ordinance "already specified a culpable mental state for one or more of the elements of the offense," not with respect to a complete absence of any mens rea. *See State v. Tolliver*, 140 Ohio St.3d 420, 2014-Ohio-3744, 19 N.E.3d 870, ¶ 23 (holding that if other culpable states of mind existed for at least one element of the offense, or if the offense is predicated on another offense including a culpable mental state, former R.C. 2901.21(B) [now R.C. 2901.21(B) and (C)(1)] would not apply).

**{¶24}** No mens rea is included for any element of the Norwood ordinance, let alone one "that is related to knowledge or intent," and therefore R.C. 2901.21(B) is implicated and not R.C. 2901.21(C)(1). Because Ms. Hammock only raises concern as to R.C. 2901.21(C)(1) in her brief, she fails to identify any plain error committed by the

trial court with respect to the jury instruction. We decline to explore any potential arguments under R.C. 2901.21(B) since they were not advanced on appeal. Accordingly, we overrule this assignment of error.

C.

{¶25} In her final assignment of error, Ms. Hammock contends that she received ineffective assistance of counsel. In order to succeed on an ineffective assistance claim, a convicted defendant must demonstrate two components: that counsel made errors so serious that counsel's representation fell below the "objective standard of reasonableness," and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 446 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), quoting *Strickland* at 688, 689.

{¶26} Ms. Hammock's argument is a bit hard to follow. She first seems to suggest that her defense counsel was ineffective for not properly protecting the record, leaving her constitutional challenge to be decided on plain error. But her counsel did raise this issue in the trial court, adequately preserving it. To be sure, counsel only challenged a portion of the ordinance, as we described above, but Ms. Hammock does not criticize that decision in her appellate brief. While she claims that allowing her to be convicted of an unconstitutional statute would be ineffective and prejudicial, the ordinance is not unconstitutional based on the arguments she advances on appeal.

{¶27} Ms. Hammock next alleges that her counsel proved ineffective for not objecting to the jury instructions, or for not submitting the proper instructions, because a jury could have determined that she did not recklessly violate the statute. But as indicated above, she never developed an argument under R.C. 2901.21(B) that

11

we would need to evaluate to analyze counsel's performance. We thus overrule her third assignment of error.

### III.

**{¶1}** In light of the foregoing analysis, we overrule all of Ms. Hammock's assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

**ZAYAS, P. J.,** and **BOCK, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.